BETTY TUFTEE, Plaintiff-Appellee, *v.* THE COUNTY OF KANE, Defendant-Appellant.

Second District   No. 78-457

Opinion filed September 10, 1979.

Gene Armentrout, State's Attorney, of Geneva (G. William Richards, Assistant State's Attorney, of counsel), for appellant.

Joseph H. Barnett and Bernard K. Weiler, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenchlager, of Aurora, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, County of Kane, appeals from an order of the Circuit Court of Kane County enjoining it from interfering with the operation of a public stable by the plaintiff, Betty Tuftee, for the care and training of 19 show horses. We affirm.

On January 15, 1976, the plaintiff entered into a contract for the sale of all but seven acres of her 76-acre tract. The plaintiff also entered into a contract with a construction company for the erection of the shell of a training barn on the seven acres calling for an expenditure of $48,000. On or about April 23, 1976, plaintiff became aware that a building permit might be necessary for the erection of the barn. On that date her son-in-law, Thomas Hoish, who was to operate the stable, called upon the county's zoning office and talked with Stanley Henderson, the director. The testimony of Hoish was that Hoish advised Henderson of the characteristics of the barn and that the purpose of the barn was for the care and training for show of 19 horses.

Henderson advised Hoish that based upon the zoning maps and his knowledge of the 76 acres that no building permit was required and that upon the filing of an affidavit the plaintiff would be granted an agricultural exemption. The record further shows that the matter of the sale of all but seven acres was probably not discussed in detail if at all on April 23, 1976, nor was such a revelation required in the affidavit form provided by the zoning office nor was it disclosed by the plaintiff in the affidavit. Further, the record fails to disclose that the plaintiff knew that such information was relevant or that the information was purposely withheld.

On May 5, 1976, the plaintiff received from the zoning office a letter granting her an agricultural exemption for the construction of her horse barn. She then began construction of the shell of the barn pursuant to her earlier contract. By June 7, 1976, the construction of the shell of the barn was virtually completed, obligating the plaintiff to an expenditure of approximately $48,000 of the anticipated total cost of $100,000.

On June 7, 1976, the plaintiff received another letter from the zoning office that she would have to stop construction until she secured a building permit. The property was "red tagged" by a zoning official the same day. It appears that the zoning office learned of the contract for the sale of 69 of the original 76 acres and the plan to have the 69 acres annexed to North Aurora. The county zoning ordinance provides that agricultural exemptions are given only for property of not less than 15 acres in size.

The plaintiff stopped construction and was granted a building permit on August 25, 1976, at which time she concluded the remaining construction, principally of the interior of the barn. However, the permit only authorized private use of the facility or, for commercial use, limited the

number of horses to 10. The plaintiff then applied for a special use permit of the building to accommodate 19 horses. The hearing for the permit was held April 11, 1977. An adverse recommendation was rendered on June 7, and on June 14 the county board denied her application for a special use. Plaintiff thereafter filed a two-count complaint for declarative and injunctive relief. Count I alleged the relevant provisions of the zoning ordinance as applied to her property were unconstitutional. Count II sought injunctive relief on the basis of equitable estoppel. At the conclusion of the bench trial the trial court found for the plaintiff on grounds of equitable estoppel and granted the injunctive relief sought by the plaintiff. The trial court made no findings as to count I regarding the constitutional issue.

Defendant alleges that both the May 5, 1976, agricultural exemption and the August 25, 1976, building permit were invalidly issued by its zoning officer. This is because the zoning ordinance does not permit agricultural exemption of properties of less than 15 acres and, because building permits must be secured before and not after, construction has commenced and the special use procedure must be favorably concluded before a building permit can issue.

Defendant's theory on appeal is that ordinarily a governmental entity is not bound by the unauthorized conduct of its officials in issuing invalid building permits. Defendant maintains that since its ordinance denies agricultural exemptions to property of less than 15 acres, the seven acres that will eventually be retained by the plaintiff do not qualify for the exemption. Further, defendant argues that the use of the barn for the care and training of horses for show is not an agricultural purpose. Defendant acknowledges that under special circumstances equitable estoppel can be invoked to prevent the government entity from denying the validity of its acts. However since we affirm on other grounds we need not discuss the issue of equitable estoppel relied upon by the trial court.

Plaintiff maintains that the care and training of horses for show is an agricultural purpose and she argues and, we believe convincingly, that a county has no authority to impose a 15-acre limitation as to property which is entitled to the statutory agricultural exemption.

■■ A municipal government may exercise only those powers conferred upon it by the State, and its right to restrain the use of private property is limited to properly promulgated enactments. (*City of Chicago v. Rumpff* (1867), 45 Ill. 90; *Village of LaGrange v. Leitch* (1941), 377 Ill. 99, 35 N.E.2d 346.) No rights exist and no powers are conferred with respect to zoning except by statute. (*People v. Ferris* (1958), 18 Ill. App. 2d 346, 152 N.E.2d 183.) The only limitations which may be placed upon the use of plaintiff's property, therefore, are those which have been enacted within

the authority granted by the General Assembly and circumscribed by statute.

Therefore, the central issue in this case is whether defendant county may properly restrain the plaintiff from using her seven acres to board and train 19 show horses. Defendant contends that it may do so by virtue of its ordinance. The power of the county to regulate the plaintiff's property rights, however, is expressly limited by the terms of the enabling acts under which its ordinances are authorized. This limitation as found in section 1 of "An Act in relation to county zoning" (Ill. Rev. Sat. 1975, ch. 34, par. 3151) is as follows:

> "The powers by this Act given shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted; nor shall they be exercised so as to impose regulations or require permits with respect to land used or to be used for agricultural purposes, or with respect to the erection, maintenance, repair, alteration, remodeling or extension of buildings or structures used or to be used for agricultural purposes upon such land except that such buildings or structures for agricultural purposes may be required to conform to building or setback lines; ° ° °."

If, therefore, the erection and use of a barn for the boarding and training of fine harness horses is an agricultural purpose, the defendant has no authority to interfere with this endeavor through zoning regulations, and the relief which it seeks must be denied.

The horses which plaintiff proposes to board and train are American Saddle breeds which are bred and trained to pull fine harness buggies as well as for show purposes. The process includes breaking a colt, training it, monitoring its development, and placing it in appropriate categories to maximize its development, and value. In addition to training, the plaintiff intends to feed, bed, clean, and otherwise care for the horses. Two of the 19 stalls in the barn are occupied by horses owned by the plaintiff. The remaining 17 stalls are to be occupied by horses owned by third parties.

The parties are in agreement that in the absence of a contrary definition, a word used in a statute is to be given its popularly understood meaning or commonly accepted dictionary definition. (*Bowman v. Armour & Co.* (1959), 17 Ill. 2d 43, 160 N.E.2d 753; *Beck v. Board of Education* (1975), 27 Ill. App. 3d 4, 325 N.E.2d 640, *affirmed* (1976), 63 Ill. 2d 10, 344 N.E.2d 440.) The parties also agree that in applying this principle the supreme court in *People ex. rel. Pletcher v. City of Joliet* (1926), 321 Ill. 385, 152 N.E. 159, defined the term "agricultural purpose" as it was used in a portion of the annexation statute of June 20, 1921 (Ill. Rev. Stat. 1925, ch. 34, §370 (Smith-Hurd)), and that such definition should

be considered by this court in construing section 1 of the county zoning statute. (*County of Lake v. Cushman* (1976), 40 Ill. App. 3d 1045, 353 N.E.2d 399.) This definition, which is based on Webster's definition of the word agriculture, is set out and discussed in *City of Joliet*, at page 388. In that opinion the court said:

> " 'Agriculture' is defined as the 'art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In this broad use it includes farming, horticulture and forestry, together with such subjects as butter and cheese making, sugar making, etc' " (321 Ill. 385, 388-89),

and,

> "Unless restricted by the context, the words 'agricultural purposes' have generally been given this comprehensive meaning * * *." 321 Ill. 385, 389.

"Livestock" is defined by Webster's New World Dictionary of the American Language (2d ed. 1973) as "domestic animals kept for use on a farm or raised for sale or profit." "Horse" is defined as a "domestic animal." "Rear" is defined "to grow or breed (animals or plants), to bring to maturity by educating, nourishing, etc." We agree with plaintiff that to exclude the feeding, training, and boarding of horses for show from the meaning of the phrase "rearing and management of livestock" strains the popular conception of that phrase.

Defendant argues that the courts of this State have interpreted "agricultural purpose" in such a way as to emphasize the aspect of "production or preparation of products for man's use." In deciding whether a specific use constitutes an agricultural purpose, the courts have related the nature of the immediate activity to the definition of agriculture. Generally, if the use bears some relation to the "cultivation of ground" or the "rearing or management of livestock" or the "production of plants and animals useful to man" it has been found to fall within the meaning of "agricultural purpose." The courts have not relied on an analysis of the ultimate business objectives of the property owner. For example, in *County of Grundy v. Soil Enrichment Materials Corp.* (1973), 9 Ill. App. 3d 746, 292 N.E.2d 755, the county sought to enjoin the soil company from spreading raw sludge on farm land in violation of its zoning ordinances. The county argued that the soil company's principal business was the disposal of sludge pursuant to a contract with a local waste treatment plant, and as such was not engaged in agriculture. In rejecting this argument the court said:

> "The fact that an organization may have many major objectives

which have no agricultural connection would not operate to characterize the sale or gift of a fertilizer if, in fact, the fertilizer as applied has an agricultural purpose. The issue is not what appellant's main business interest is, but solely whether or not the application and use of digested sludge on farm lands is serving an agricultural purpose." 9 Ill. App. 3d 746, 753.

In a companion case, *Soil Enrichment Materials Corp. v. Zoning Board* (1973), 15 Ill. App. 3d 432, 304 N.E.2d 521, the court held that the construction of a 4-million-gallon holding pit for the purpose of storing digested sludge was an agricultural purpose. The court held that its storage and subsequent application to farm soil were agricultural purposes without making a distinction between the two. The rationale for the court's holding in *Soil Enrichment Materials Corp.* is simply that sooner or later the sludge became fertilizer, and fertilizer is clearly an element of agriculture. Its nature in that regard is unaffected by the objectives of those who deal with it.

■■■ Likewise, the rearing of livestock is an agricultural purpose. Horses are livestock. The purpose for which they are raised should have no bearing on a determination of whether the activities of raising them fall within the scope of the definition of "the rearing and management of livestock." The legislature elected to use the phrase "agricultural purpose" without expressly limiting the varied activities contemplated by its commonly accepted definition. In withholding from the county the authority to regulate the use of property dedicated to agricultural purposes, the legislature did not distinguish the rearing of animals for consumption from the rearing of animals for show. The legislative silence in this regard does not authorize the creation of such distinction by governmental entities. *County of Lake v. Cushman* (1976), 40 Ill. App. 3d 1045, 353 N.E.2d 399.

■■ We conclude that the purpose for which the plaintiff's property was to be used is agricultural. It follows, under our holding in *Cushman*, that the county has no authority to establish acreage minimums to which it will grant the statutory right of exemption from zoning regulations. Further the county has no zoning authority to require the plaintiff to obtain building and special use permits or to restrain her agricultural use of the property other than as to statutorily permitted building or set-back lines.

The defendant maintains that plaintiff's argument regarding the invalidity of the county's ordinance denying agricultural exemptions to properties with acreage of less than 15 acres was not contained in her complaint nor argued in the trial court. The defendant draws our attention to the language of *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, 420, wherein the supreme court said:

"It has frequently been held that the theory upon which a case is

tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review. [Citations.] A corollary to this rule permits an appellee to defend a judgment on review by raising an issue not previously ruled upon by the trial court if the necessary factual basis for the determination of such point was contained in the record."

However, defendant attempts to qualify this rule by suggesting that the corollary rule of *Kravis* is available only to appellees who were *defendants* in the trial court. While defendant cites no authority for this restriction on the rule referred to in *Kravis*, we note an earlier supreme court case wherein, affirming judgment for the appellee who was the *plaintiff* in the trial court, the court held "* * * where a litigant obtains the relief he has sought, he may rely upon any ground appearing in the record to support his judgment. [Citations.]" (*La Salle National Bank v. Village of Grayslake* (1963), 29 Ill. 2d 489, 492, 194 N.E.2d 250, 252.) Similarly, and after *Kravis*, the appellate court in *Harris Trust & Savings Bank v. Joanna-Western Mills* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629, held that the *plaintiff-appellee* could urge any point on appeal in support of its judgment though not raised in the trial court, but where the facts to support the point were before the trial court. (53 Ill. App. 3d 542, 554.) We find no distinction exists as between *plaintiff* or *defendant* appellees for the application of the general rule.

In sum, the plaintiff-appellee may raise for the first time on appeal any legal issue to defend her judgment for which there was a factual basis in the trial court. The defendant's zoning ordinance denying plaintiff the statutorily authorized agricultural exemption from zoning because the property would eventually consist of less than 15 acres is invalid, as are the requirements that she qualify for building or special use permits. The care and training of horses for show is an agricultural purpose within the contemplation of section 1 of "An Act in relation to county zoning." Ill. Rev. Stat. 1975, ch. 34, par. 3151.

For these reasons we affirm the judgment of the Circuit Court of Kane County.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.