THE COUNTY OF KNOX *ex rel.* ROBERT L. MASTERSON, as Knox County Zoning Department Adm'r, Plaintiff-Appellant, v. THE HIGHLANDS, L.L.C., *et al.*, Defendants-Appellees.—THE HIGHLANDS, L.L.C., Plaintiff-Appellee, v. THE KNOX COUNTY ZONING BOARD OF APPEALS *et al.*, Defendants-Appellants.—JOHN L. LEONARD *et al.*, Plaintiffs-Appellants, v. THE HIGHLANDS, L.L.C., *et al.*, Defendants-Appellees.

Third District    Nos. 4—97—0912, 4—97—0913, 4—97—0929 cons.

Opinion filed December 30, 1998.

McLAREN, J., dissenting.

Paul L. Mangieri, State's Attorney, of Galesburg, for appellant County of Knox.

George Mueller, of Ottawa, for appellants Nina L. Baird, William D. Baird, and John J. Leonard.

Charles M. Gering and Stephen F. Pflaum, both of McDermott, Will & Emery, of Chicago, and S. David Simpson, of Hattery, Simpson & West, of Galesburg, for appellees.

Barbara Kay Stille, of Bloomington, for *amicus curiae* Illinois Agricultural Association.

John Narmont, of Springfield, for *amicus curiae* Illinois Beef Association, Inc.

Michael Barton, of Bellatti & Barton, of Springfield, for *amicus curiae* Illinois Pork Producers Association.

JUSTICE RAPP delivered the opinion of the court:
In these consolidated cases, Knox County (county), John Leonard, William Baird, Nina Baird, and the Knox County Zoning Board of Appeals (Board) *et al.*, appeal from the trial court's grant of summary judgment in favor of The Highlands, L.L.C. We affirm.

These cases involve the establishment by The Highlands, L.L.C., of a large-scale hog-confinement facility in rural Knox County where the land will be devoted to the raising and feeding of hogs. Knox County and the individual objectors voice serious concern about the burdens placed upon surrounding lands and land occupiers with respect to animal waste and its attendant odors.

On December 5, 1996, The Highlands, L.L.C., and James Baird (husband of co-owner Patricia Baird) (hereinafter the Highlands) filed an application for a construction permit with the Knox County Zoning Department, seeking to erect six buildings as part of a hog-confinement

operation in rural Knox County. The permit issued several days later. On March 3, 1997, William and Nina Baird (the Bairds), who owned property within one mile of the subject property, appealed the issuance of the permit to the Knox County Zoning Board of Appeals. Other citizens eventually joined in this appeal. Pursuant to the Knox County zoning resolution, a stay of construction activities went into effect upon the filing of the appeal.

On April 23, 1997, the Board held a public hearing on the appeal. Four of the five members of the Board were present. After the presentation of the evidence, two members voted to rescind the permit, one passed his vote, and the chairman did not vote, explaining that, since four votes were necessary to rescind the permit, the motion to rescind could not carry even if he voted in favor of it. The chairman then ruled that the motion to rescind had failed. However, two days later, Knox County State's Attorney Paul Mangieri overruled the announced decision of the Board and opined that the appeal of the permit was granted and that the building permit had been canceled. See *Prosser v. Village of Fox Lake*, 91 Ill. 2d 389 (1982). Despite being informed of the State's Attorney's opinion and the cancellation of the permit, the Highlands began ground preparation activities on the proposed construction site. On May 5, Robert Masterson, the zoning department administrator, notified the Highlands that it was in violation of the zoning resolution and that it must immediately cease construction and apply for a conditional use permit.

On May 9, 1997, the Highlands filed a complaint in Knox County circuit court seeking declaratory and injunctive relief in three counts and administrative review in the fourth count. On May 12, two separate complaints seeking injunctive relief against the Highlands were filed by the county and by John Leonard and the Bairds. After a hearing, the court denied the motions for temporary restraining orders against the Highlands, and the appellate court affirmed the denial.

The Highlands then moved for summary judgment in all three cases. In the cases filed against it, the Highlands moved for summary judgment as to all the counts. In the case it filed, the Highlands sought summary judgment only as to the counts seeking declaratory and injunctive relief. The trial court granted the Highlands' motions in all three cases, including a finding that the Board lacked jurisdiction to proceed. In light of these decisions, Highlands subsequently dismissed the remaining count of its complaint seeking administrative review. These appeals followed.

The appellants first contend that the trial court erred in considering the Highlands' motions for summary judgment, as these motions constituted a collateral attack on the Board's decision, which should have only been subject to administrative review. We disagree.

■ Section 5—12012 of the Counties Code provides that all final administrative decisions of zoning boards of appeal shall be subject to judicial review pursuant to the provisions of the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)). See 55 ILCS 5/5—12012 (West 1996). Where the Administrative Review Law is applicable and provides a remedy, the circuit court may not redress a party's grievance through any other type of action. *Dubin v. Personnel Board*, 128 Ill. 2d 490, 498 (1989). A reviewing court's power to resolve factual and legal issues arising from an agency's decision must be exercised within its review of the agency's order and not in a separate proceeding. *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 316-17 (1996). The county had the power to regulate the location and use of buildings on unincorporated land. See 55 ILCS 5/5—12001 (West Supp. 1997).

■ In contrast to the above cases is the case of *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304 (1989). In *Castaneda*, the supreme court recognized several exceptions to the doctrine of exhaustion of administrative remedies. One of these exceptions is "where the agency's jurisdiction is attacked because it is not authorized by statute." *Castaneda*, 132 Ill. 2d at 309. This exception is further developed in *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151 (1990). In *Lake County State's Attorney*, the second district reviewed this issue when it held that any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created. *Lake County State's Attorney*, 200 Ill. App. 3d at 156. Where the very authority of an administrative body is in question, a question of law, not fact, is presented, and the determination of the scope of its power and authority is a judicial function and is not a question to be finally determined by the administrative agency itself. The exhaustion of administrative remedies is not required where a party attacks an agency's assertion of jurisdiction " 'on its face and in its entirety on the ground that it is not authorized by statute.' " *Lake County State's Attorney*, 200 Ill. App. 3d at 156, quoting *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 551 (1978). The more recent case of *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751 (1995), used an identical analysis allowing a challenge to the jurisdiction of the administrative agency.

■ The statutory authority granting Knox County the right to regulate and restrict the location and use of structures is found in section 5—12001 of the Counties Code (55 ILCS 5/5—12001 (West 1996). This section expressly states that counties have no authority to impose regulations or require permits with respect to land used or to be used for agricultural purposes.

The term "agriculture" was defined by the supreme court in *People ex rel. Pletcher v. City of Joliet*, 321 Ill. 385 (1926). The court stated:

" 'Agriculture' is defined as the 'art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In this broad use it includes farming, horticulture and forestry, together with such subjects as butter and cheese making, sugar making, etc.' Unless restricted by the context, the words 'agricultural purposes' have generally been given this comprehensive meaning by the courts of the country." *City of Joliet*, 321 Ill. at 388-89.

This definition was followed by the court in the case of *County of Kendall v. Aurora National Bank Trust No. 1107*, 170 Ill. App. 3d 212 (1988), and in *Tuftee v. County of Kane*, 76 Ill. App. 3d 128 (1979), wherein this court held that the feeding, training, and boarding of horses fell within the scope of the agricultural purpose of "rearing and management of livestock." *Tuftee*, 76 Ill. App. 3d at 132. The *Tuftee* court went on to hold that the purpose for which horses are raised should have no bearing on whether the activities involved in raising them constitute "rearing and management of livestock." *Tuftee*, 76 Ill. App. 3d at 132. Other cases defining "agriculture" are *County of Lake v. Cushman*, 40 Ill. App. 3d 1045 (1976) (poultry hatchery on 3.09 acres), and *Soil Enrichment Materials Corp. v. Zoning Board of Appeals*, 15 Ill. App. 3d 432 (1973) (sewage sludge stored and applied to soil).

■ Our review of an order granting summary judgment is *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). We conclude, upon *de novo* review, that the rearing and raising of hogs, in any quantity, constitute agricultural purpose under the recognized definition cited above.

Appellants next contend that the trial court erred in granting summary judgment in the Highlands' favor and dismissing with prejudice the appellants' complaint seeking injunctive relief against Highlands. Our review of the complaints leads us to conclude that the trial court acted properly in granting summary judgment and dismissing the complaints with prejudice based upon the same factors indicated above.

The dissent would allow the County of Knox and other objectors, supported by this court's opinion that the operation is subject to the zoning ordinance of Knox County, to return to the trial court to pursue their respective attempts to prohibit the operation of the Highlands'

hog farm. At the time the trial court ruled on counts I, II, and III of the Highlands' complaint, count IV seeking administrative review was pending. Having received a determination that the zoning laws did not apply to its operation, the Highlands abandoned its administrative review count and voluntarily dismissed it. The dissent would then place form (the court ruled on the wrong counts) over substance (it will still be an agricultural pursuit).

■ In its brief *amicus curiae*, the Illinois Agricultural Association directs this court's attention to a new act entitled the Livestock Management Facilities Act (the Livestock Act) (510 ILCS 77/1 *et seq.* (West 1996)). This Act became effective on May 21, 1996. The proceedings in the case before the court began on December 5, 1996, approximately 6¹/₂ months after the effective date of the Livestock Act. This new Act states its purpose in section 5 as follows:

"Policy.

(a) The General Assembly finds the following:

(1) Enhancements to the current regulations dealing with livestock production facilities are needed.

(2) The livestock industry is experiencing rapid changes as a result of many different occurrences within the industry including increased sophistication of production technology, increased demand for capital to maintain or expand operations, and changing consumer demands for a quality product.

(3) The livestock industry represents a major economic activity in the Illinois economy.

(4) The trend is for larger concentration of animals at a livestock management facility due to various market forces.

(5) Current regulation of the operation and management of livestock production is adequate for today's industry with a few modifications.

(6) Due to the increasing numbers of animals at a livestock management facility, there is a potential for greater impacts on the immediate area.

(7) Livestock waste lagoons must be constructed according to standards to maintain structural integrity and to protect groundwater.

(8) Since a majority of odor complaints result from manure application, livestock producers must be provided with an educational program that will enhance neighbor awareness and their environmental management skills, with emphasis on management of livestock wastes.

(b) Therefore, it is the policy of the State of Illinois to maintain an economically viable livestock industry in the State of Illinois while protecting the environment for the benefit of both the live-

stock producer and persons who live in the vicinity of a livestock production facility." 510 ILCS 77/5 (West 1996).

The Livestock Act also defines a livestock management facility as follows:

"Livestock management facility. 'Livestock management facility' means any animal feeding operation, livestock shelter, or on-farm milking and accompanying milk-handling area. Two or more livestock management facilities under common ownership, where the facilities are not separated by a minimum distance of 1/4 mile, and that share a common livestock waste handling facility shall be considered a single livestock management facility. A livestock management facility at educational institutions, livestock pasture operations, where animals are housed on a temporary basis such as county and state fairs, livestock shows, race tracks, and horse breeding and foaling farms, and market holding facilities are not subject to this Act." 510 ILCS 77/10.30 (West 1996).

The Livestock Act places the rule-making authority and enforcement of these regulations upon two state agencies, the Department of Agriculture and the Environmental Protection Agency. 510 ILCS 77/15(c), 55(b), (c) (West 1996).

In light of the emergence of mega hog- and cattle-feeding operations such as those involved in these cases, the legislature appears to have continued to preempt agriculture from local zoning and reserved unto state government the uniform regulation of such facilities.

In summary, we agree with the trial court and allow collateral attack on the decision of the Board because the Board lacked jurisdiction to control agricultural purposes through zoning ordinances. Inherent in this affirmance is our opinion that *de novo* review of the granting of summary judgment confirms the conclusion that a hog-confinement operation on land is an agricultural purpose.

Based upon this affirmance of the trial court's decision in counts I, II, and III of the Highlands' actions for declaratory judgment and injunctive relief (appeal No. 4—97—0913), our review of the granting of summary judgment in this case brought by Knox County (appeal No. 4—97—0912) to seek compliance with the decision of the Zoning Board of Appeals leads us to the same conclusion. The relief sought in that case is predicated upon the ability of the County of Knox to regulate hog farms by zoning ordinance *per se* or as a commercial feed lot. Our previous opinion herein holds it may not.

For the above reasons, the judgment of the circuit court of Knox

County is affirmed in appeals Nos. 4—97—0913, 4—97—0912, and 4—97—0929.

Affirmed.

COLWELL, J., concurs.

JUSTICE McLAREN, dissenting:

The majority has concluded that the Knox County Zoning Board of Appeals has no jurisdiction over zoning. Because I cannot join in such a patently incorrect declaration, I must dissent.

Citing *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304 (1989), the majority rightly states that a party need not exhaust its administrative remedies if it attacks an agency's jurisdiction as not authorized by statute. However, in examining the case that *Castaneda* cites for this proposition, *One Way Liquors, Inc. v. Byrne*, one notes that "[t]he meaning of the word 'jurisdiction' is limited in scope. It only applies to the *authority to hear and decide the case* and does not depend on the correctness of the decision made. [Citations.] *A body has jurisdiction to make a wrong as well as a right decision.*" (Emphasis added.) *One Way Liquors, Inc. v. Byrne*, 105 Ill. App. 3d 856, 861 (1982). It is inconceivable that Knox County, which is given statutory authority in the Counties Code to restrict and regulate the location and use of structures, does not have the authority to determine whether the Highlands' buildings are subject to permit requirements. While the Code prohibits the county from requiring permits on land used for agricultural purposes, it is the county that must determine for what purpose land is being used. Its jurisdiction does not depend on the correctness of its decision. It has the right to be wrong; it therefore has jurisdiction over the matter. The Highlands' attack was *not* an attack on the Board's jurisdiction on its face and in its entirety, as the Highlands did not argue that the Board cannot regulate structures on unincorporated land in Knox County. The attack was on the Board's decision that the use of the land was not exempt from permit requirements. This is an attack on the correctness of the Board's decision, which should only be attacked through administrative review.

This situation is analogous to that of obtaining an exemption from property taxes. Anyone seeking to claim an exemption for the first time (other than a homestead exemption) must file an application with the county board of review or board of appeals. 35 ILCS 200/ 15—5 (West 1996). Taxation is the rule, and exemption is the exception. *Rogers Park Post No. 108 v. Brenza*, 8 Ill. 2d 286, 290 (1956). The

party seeking an exemption must prove clearly and conclusively that he is entitled to it. *Hall v. Illinois Property Tax Appeal Board*, 98 Ill. App. 3d 824, 828 (1981). The board, as an administrative agency, has authority to construe statutory provisions in making its determination. *Hall*, 98 Ill. App. 3d at 827. A party may not simply grant itself an exemption and refuse to pay taxes. However, the majority in this case would allow the Highlands to simply claim that its use of the land is agricultural and avoid the administrative agency set up by statute to regulate that property. For if the Board had no jurisdiction over the matter, as the majority argues, the Highlands had no duty to ever appear before the Board. The majority encourages people not to apply for permits and flout the law, making the Board then involve itself in litigation that should be eliminated by the permit process that is already in place. This cannot be the system envisioned by our legislature or suggested by our courts.

I also disagree with the majority's presumptive conclusion that the raising of hogs, in *any* quantity, constitutes an agricultural purpose. Many municipal officials will be shocked to learn that agricultural activities have been taking place in their cities and towns, as people raising pot-bellied pigs, under the majority's rule of law, must be involved in agricultural purposes. If the raising of 300,000 hogs is agricultural, so must be the raising of one. The majority is sallying into dangerous territory and ruling beyond its apparent expertise when it states unequivocally that quantity does not matter. I am unable to conclude as a matter of law that the Highlands' operation is a hog farm rather than a hog factory.

The majority also accuses this dissent of placing form over substance in regards to the fact that the Highlands voluntarily dismissed its administrative review count after the trial court granted summary judgment on the other counts. It is not mere "form" when a trial court rules on improperly brought cases, and the "substance" the majority has defined (that the operation will still be an agricultural pursuit) is best left to administrative agencies and other triers of fact. The Highlands failed to file a cross-appeal asking this court to reinstate the administrative review count should the case be reversed for failure to exhaust administrative remedies. Therefore, we do not have the jurisdiction to grant the relief which is given by the majority. See *Stacke v. Bates*, (1992), 225 Ill. App. 3d 1050, 1054-55 (1992). The only way for the majority to achieve its desired end of finding the operation to be agricultural is to declare its actions a matter of substance over *substance*, since there is no longer an administrative review case which could find the operation to be agricultural. I do not opine that the Highlands would be subject to zoning by the county. I do not conclude,

as a matter of law, that the operation is or is not agricultural. I do conclude that the Board did have jurisdiction to make a decision, *right or wrong*, as to whether the operation was agricultural or subject to permit requirements, and that the decision was reviewable by the trial court through administrative review. The fact remains that the Highlands abandoned *its* ability *to* seek administrative review; this does not lessen the fact that we do not have the ability to grant the Highlands the relief which the majority does today. See *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 321 (1996) (plaintiff could not attain through class action what it could not attain in administrative review). Jurisdiction is not determined by expediency but by the law. Our supreme court recently considered the distinction which I am espousing and inferentially reaffirmed the need to exhaust administrative remedies. See *McLean v. Department of Revenue*, 184 Ill. 2d 341 (1998); *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54 (1997) (although the court concluded that the Illinois State Labor Relations Board (ISLRB) erred in finding that Winfield employed the requisite number of employees to bring the certification of a collective bargaining representative under the ISLRB's purview, the ISLRB did *not* err in determining that it had the jurisdiction to do so). Furthermore, a remedy at law does not become inadequate simply because a plaintiff fails to preserve it. The majority does not have the authority to grant the Highlands the relief it abandoned at the trial court level and failed to request before this court by failing to file a cross-appeal.