# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423

---

| | |
|---|---|
| Appellate Court Caption | BENJAMIN B. LeCOMPTE, CATHLEEN B. LeCOMPTE, and NORTH STAR TRUST COMPANY, as Successor Trustee of Harris Bank Barrington N.A., as Trustee Under Trust Number 11-5176, Plaintiffs-Appellants, v. ZONING BOARD OF APPEALS FOR THE VILLAGE OF BARRINGTON HILLS; JONATHAN J. KNIGHT, Chairman; JUDITH FREEMAN, BYRON JOHNSON, NANCY MASTERSON, GEORGE MULLEN, KAREN ROSENE, and MARK ROSSI, as Members of the Zoning Board of Appeals, Defendants-Appellees. |
| District & No. | First District, Third Division <br> Docket No. 1-10-0423 |
| Rule 23 Order filed | June 30, 2011 |
| Rehearing denied | September 8, 2011 |
| Rule 23 Order withdrawn | September 8, 2011 |
| Filed | September 21, 2011 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The zoning board of the village where plaintiffs resided properly ordered plaintiffs to cease and desist using their property for the commercial boarding of horses, since the commercial boarding of horses was not a permitted agricultural use in the R-1 district in which plaintiffs resided. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-00934; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bauch & Michaels, LLC, of Chicago (Paul M. Bauch, Kenneth A. Michaels, Jr., Carolina Y. Sales, and Luke J. Hinkle, of counsel), for appellants. |
| | Burke, Warren, MacKay & Serritella, P.C., of Chicago (Douglas E. Wambach, George J. Lynch, and Susan M. Horner, of counsel), for appellees. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion. Justices Quinn and Murphy concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Dr. Benjamin LeCompte, Cathleen LeCompte (LeComptes), and the North Star Trust Company as successor trustee of Harris Bank Barrington N.A. and as trustee under trust number 11-5176, filed a complaint for administrative review of a final decision by the Zoning Board of Appeals (Zoning Board) for the Village of Barrington Hills (Village). The Zoning Board upheld a Village order directing the LeComptes to stop using their property for the commercial boarding of horses because it was not a permitted agricultural use in an R-1 zoned district. The circuit court affirmed the Zoning Board's decision. We find that the commercial boarding of horses is not a permitted use of property in an R-1 zoned district because it is not agriculture as that term is defined in section 5-2-1 of The Village of Barrington Hills' Zoning Ordinance (Zoning Code). Therefore, we affirm the order of the circuit court.

¶ 2                                    BACKGROUND

¶ 3    The LeComptes are the beneficial owners of approximately 130 acres of property located at 350 Bateman Road, in the Village of Barrington Hills, Illinois. The property was organized in December of 2003, as Oakwood Farm of Barrington Hills, L.L.C. (Oakwood Farm), for the purpose of operating a horse farm. There are approximately 45 horses boarded at Oakwood Farm and 35 are owned by third parties who signed an "Equine Training and

Breeding Agreement." The other 10 horses are owned by the LeComptes and 2 of those horses are involved in breeding. The property consists of a single-family residence where the LeComptes reside with a stable and a riding arena, which is approximately 30,000 square feet, and there are 60 stalls for the horses and other buildings. In addition to boarding horses, the LeComptes also grow, cut and bale their own hay; raise, train and sell horses; provide pasturage; and provide veterinary services for the horses.

¶ 4      The Village has been predominantly a residential community, with approximately 72.3% of its land dedicated to residential and agricultural property more than five acres in size, 24.6% of its land is forest preserves, 2.1% is residential property less than five acres in size, 0.7% is institutional, and 0.4% is business and industrial. Many of the residential properties are involved in equestrian activities and these activities remain an important part of the Village's character.

¶ 5      Oakwood Farm is located in a residential district of the Village zoned R-1. The preamble to section 5-5-2 of the Village's Zoning Code provides (1) that agriculture is a permitted use for land located in an R-1 zoned district; (2) that other than accessory uses–uses incidental to and on the same or an adjacent zoning lot or lots under one ownership–only one of the enumerated permitted uses may be established on a zoning property; and (3) that no building or zoning lot shall be devoted to any use other than a use permitted in the zoning district. Village of Barrington Hills Zoning Ordinance § 5-5-2 (Feb. 27, 2006).

¶ 6      Section 5-2-1 of the Zoning Code defines "agriculture" as "[t]he use of land for agricultural purposes, including farming, dairying, pasturage, apiculture, horticulture, floriculture, viticulture and animal and poultry husbandry (including the breeding and raising of horses as an occupation)." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972). Section 5-2-1 also defines "animal husbandry" as "[t]he breeding and raising of livestock, such as horses, cows and sheep." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added June 27, 2005).

¶ 7      On January 10, 2008, the Village's attorney delivered a cease and desist letter to the LeComptes which stated that the LeComptes' property, Oakwood Farm, was being used as a commercial horse boarding facility in violation of the Zoning Code and ordered the LeComptes to immediately cease and desist using the property for the nonpermitted use.

¶ 8      The LeComptes filed an appeal with the Zoning Board. The Zoning Board conducted a hearing on August 13 and 28, 2008, which was attended by the parties to this appeal, the attorneys for the LeComptes and the Village, and members of the community. The issue before the Zoning Board was whether the commercial boarding of horses is agriculture, a permitted use of property in an R-1 zoned district under section 5-5-2(A) of the Zoning Code.

¶ 9      During the hearing, the LeComptes admitted that they were using their property for the commercial boarding of horses. Dr. LeCompte argued that the commercial boarding of horses is agriculture as defined by section 5-2-1 of the Zoning Code. He also argued that since the commercial boarding of horses is a permitted agricultural use, according to section 5-3-4(A) of the Zoning Code, the Zoning Board was without authority to regulate the use of his property.

¶ 10      The attorney for the Village, Doug Wambach, argued that the commercial boarding of

horses is not a permitted use in an R-1 zoned district. He also argued that, according to the definition of agriculture in section 5-2-1 of the Zoning Code, only the breeding and raising of horses is a permitted use in an R-1 zoned district and horse boarding is not. He further argued that the drafters of the Zoning Code intended that the permitted uses in an R-1 zoned district would be compatible with each other and that Oakwood Farm's commercial boarding facility was not compatible with the other single-family residences in the R-1 zoned district.

¶ 11 At the conclusion of the hearing, the Zoning Board made the following findings: (1) that the LeComptes are operating a commercial boarding facility in an R-1 zoned district; (2) that the commercial boarding of horses is not a permitted agricultural use in an R-1 zoned district; and (3) that because the commercial boarding of horses is not a permitted agricultural use, section 5-3-4(A) does not apply. Finally, the Zoning Board denied the LeComptes' petition to overturn the Village's order to cease and desist using Oakwood Farm for the commercial boarding of horses.

¶ 12 The LeComptes filed a complaint for administrative review in the circuit court and requested that the Zoning Board's decision be reversed. The circuit court affirmed the Zoning Board's decision and the LeComptes appealed to the appellate court.

¶ 13 After the LeComptes filed their reply brief in the appellate court, the Zoning Board filed a motion to strike the reply brief and argued that it contained arguments that were not presented in the administrative proceedings in the circuit court or in its initial appellate brief. The Zoning Board's motion to strike was taken with the case.

¶ 14 ANALYSIS

¶ 15 I. Standard of Review

¶ 16 The LeComptes appeal from the circuit court's order affirming the Zoning Board's decision. Appellate courts review the decision of the administrative agency, herein the Zoning Board, not the circuit court. *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 786 (2006). The Zoning Board was asked to interpret the Village's Zoning Code to determine whether the commercial boarding of horses is agriculture, a permitted use under the Zoning Code. The LeComptes have admitted that they were engaged in the commercial boarding of horses on their property. However, the parties disagree about whether or not the commercial boarding of horses is agriculture. We note that a mixed question of law and fact is one in which the facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard or whether the rule of law as applied to the historical facts is or is not violated. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). The agency's application of a rule of law to a mixed question of law and fact will not be reversed unless it is clearly erroneous. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 243-44 (2009). A decision is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Cook County Republican Party*, 232 Ill. 2d at 244.

¶ 17                    II. The Village's Zoning Code
¶ 18            A. The Village Is a Home Rule Unit of Government
¶ 19        The threshold question we must decide is whether the Village had the power to promulgate the Zoning Code. We note that the Illinois Constitution makes the Village a home rule unit of government; therefore, it "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, § 6(a). As a home rule unit, the Village has the power to enact the Zoning Code (*County of Cook v. John Sexton Contractors Co.*, 75 Ill. 2d 494, 511-12 (1979)), as long as the legislative enactment comports with constitutional requirements. *Thompson v. Cook County Zoning Board of Appeals*, 96 Ill. App. 3d 561, 569 (1981). The Village also has the power to define the terms in its Zoning Code and the terms may be given a broader or narrower meaning than they otherwise would have. *County of Lake v. Zenko*, 174 Ill. App. 3d 54, 59-60 (1988) (citing *People v. Burmeister*, 147 Ill. App. 3d 218, 222 (1986), *appeal denied*, 113 Ill. 2d 577 (1987)). Accordingly, we hold that the Illinois Constitution empowered the Village, a home rule unit, to enact its Zoning Code. Ill. Const. 1970, art. VII, § 6(a).

¶ 20            B. The Rules of Statutory or Ordinance Construction
¶ 21        Next, we must determine whether the Zoning Board's decision–that the commercial boarding of horses is not agriculture, a permissible use, according to the Village's Zoning Code–was clearly erroneous. See Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972); § 5-5-2(A) (Feb. 26, 2006).
¶ 22        The rules of statutory construction apply to municipal ordinances, like the Village's Zoning Code. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009). When a court construes a zoning ordinance, "[e]ffect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, 'the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance.' [Citation.]" (Internal quotation marks omitted.) *Cosmopolitan National Bank v. County of Cook*, 103 Ill. 2d 302, 313 (1984). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Lauer v. American Family Life Insurance Co.*, 199 Ill. 2d 384, 388 (2002).

¶ 23            C. Agriculture Is a Permitted Use Under the Zoning Code
¶ 24        With the rules of statutory construction in mind, we now review the Zoning Board's decision. The LeComptes argued before the Zoning Board that commercial horse boarding is a permitted agricultural use under section 5-5-2(A) of the Zoning Code. Village of Barrington Hills Zoning Ordinance § 5-5-2(A) (Feb. 26, 2006). They also argued that the terms "breeding" and "raising," in the definition for agriculture in section 5-2-1 of the Zoning Code (Village of Barrington Hills Zoning Ordinance § 5-2-1), encompass the boarding of horses. The Village disagrees and argues that the boarding of horses is not a permitted use under section 5-5-2(A) of the Zoning Code and that the boarding of horses is

-5-

not agriculture based upon the definition of agriculture in section 5-2-1 of the Zoning Code.

¶ 25		Section 5-5-2(A) of the Zoning Code provides that agriculture is a permitted use in an R-1 zoned district. Village of Barrington Hills Zoning Ordinance § 5-5-2(A) (Feb. 26, 2006). Section 5-5-2(A) sets forth the permissible uses in an R-1 zoning district as (1) agriculture, (2) single-family detached dwellings, (3) signs, and (4) accessory uses, incidental to and on the same or an adjacent zoning lot or lots under one ownership, as the principal use. Village of Barrington Hills Zoning Ordinance § 5-5-2(A) (Feb. 26, 2006). Therefore, we must determine whether the Zoning Board erred when it found that the commercial boarding of horses is not agriculture, a permitted use, as defined by section 5-2-1 of the Zoning Code.

¶ 26			D. The Commercial Boarding of Horses Is Not Agriculture

¶ 27		As previously indicated, section 5-2-1 defines agriculture as "[t]he use of land for agricultural purposes, including *** animal *** husbandry (including the breeding and raising of horses as an occupation)." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972). The preamble to the definitions in section 5-2-1 provides that "[i]n the construction of this zoning title, the words and definitions contained in this chapter shall be observed and applied, except when the context clearly indicates otherwise." Village of Barrington Hills Zoning Ordinance § 5-2-1. Finally, the rules of statutory construction provide that when specific definitions of any terms are provided, those definitions, when reasonable, will be sustained to the exclusion of hypothetical indulgences. *RVS Industries, Inc. v. Village of Shiloh*, 353 Ill. App. 3d 672, 674 (2004).

¶ 28		In support of their argument that commercial horse boarding is agriculture, the LeComptes focus on the term "including" that is used in the definition of agriculture and they argue that the use of the term "including" means that the list following the term is illustrative, not exhaustive, and that the terms that follow are a partial list. We find the LeComptes' argument is consistent with cases construing the terms "includes" and "including." See *People v. Perry*, 224 Ill. 2d 312, 328 (2007); *Paxson v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912, 920 (1995). However, while the Zoning Code defined agriculture as land used for "agricultural purposes," and used the term "including" to provide examples of other uses of land for agricultural purposes, unless the boarding of horses is similar to other uses in the definition, the rules of statutory construction prevent us from saying that the Village intended for the commercial boarding of horses to be a use included in that list. *Perry*, 224 Ill. 2d at 328 (the preceding general term is to be construed as a general description of the listed items and other similar items).

¶ 29		Specifically, the LeComptes argue that the terms "breeding" and "raising" in the definition of agriculture encompass the boarding of horses. The definition of agriculture in section 5-2-1 lists animal husbandry as a use for agricultural purposes. Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972). The definition also includes the "breeding and raising of horses as an occupation" as an example of animal husbandry. Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972). Because the Zoning Code does not define the terms "breeding" and "raising," we will look at a dictionary to give the terms their ordinary and popularly understood meaning. *O'Donnell v. City of*

*Chicago*, 363 Ill. App. 3d 98, 107-08 (2005) (citing *People v. Maggette*, 195 Ill. 2d 336, 349 (2001)); *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086 (2000) (A "court may look to dictionary definitions to derive the plain and ordinary meaning without rendering the term ambiguous." (citing *In re A.P.*, 179 Ill. 2d 184, 198-99 (1997))).

¶ 30        Webster's Third New International Dictionary defines the term "breeding" as "the action or process of bearing or generating," as gestation or hatching, or as the propagation of plants and animals. Webster's Third New International Dictionary 274 (1986). Webster's also defines the term "raising" as "the breeding and care of animals," and it defines the term "raise" as breeding or caring for animals to maturity. Webster's Third New International Dictionary 1877 (1986). We note that Webster's defines "boarding" as the act of supplying meals and lodgings *for pay*. Webster's Revised Unabridged Dictionary 160 (1913). We find that Webster's definitions make it clear that a person who boards horses engages in different acts from a person who breeds and raises horses.

¶ 31        We note that the Zoning Code also defines animal husbandry as "[t]he breeding and raising of livestock, such as horses." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added June 27, 2005). The definition does not include the commercial boarding of horses as part of the definition of animal husbandry. Based upon the Zoning Code's definition of agriculture and Webster's definitions of the terms "breeding," "raising," and "boarding," we find that the drafters of the Zoning Code did not intend for the commercial boarding of horses to be included in the definition of agriculture as a use for agricultural purposes. *Cosmopolitan National Bank*, 103 Ill. 2d at 313.

¶ 32        We are unwilling to interpret the definition for agriculture in the Zoning Code to include the commercial boarding of horses as a use for agricultural purposes because the words in context do not support such an interpretation. *Cosmopolitan National Bank*, 103 Ill. 2d at 313; Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972). Therefore, following *Perry*, we find that, while the terms in the definition of agriculture that describe the uses for agricultural purposes are not exhaustive, if there are any other terms to be included in the description of uses of the land for agricultural purposes they should be *similar* to, not different from, as in this case, the listed terms. *Perry*, 224 Ill. 2d at 328; also see *Paxson*, 276 Ill. App. 3d at 920; *Kostecki v. Pavlis*, 140 Ill. App. 3d 176, 181 (1986).


¶ 33                    E. Using Stables for the Commercial Boarding of Horses
                       Does Not Comport With the Village's Zoning Code

¶ 34        Next, the LeComptes argue that using their stables for the commercial boarding of horses comports with the Village's Zoning Code. We disagree. The Zoning Code defines a "stable" as "[a] detached accessory building the primary use of which is the keeping of horses." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Feb. 27, 2006). We note, however, that the Zoning Code also defines an "accessory building" as "subordinate to and serves a principal building or principal use." Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Apr. 1, 1963). Although the stable may be an accessory building, the LeComptes are not using the stable as an accessory building that is subordinate to a principal building or use. Therefore, because the LeComptes are using the stable for the commercial

boarding of horses, which is a primary use and not a subordinate use, it is a use that does not comport with the Village's Zoning Code.

¶ 35                F. Viewed in its Entirety, the Zoning Code

Supports the Zoning Board's Decision

¶ 36       The LeComptes also argued that the Village intended for residents to commercially board horses. In order to determine the intent of the Village when it enacted the Zoning Code, we must consider the Zoning Code in its entirety. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007) (citing *Perry*, 224 Ill. 2d at 323).

¶ 37       Several sections of the Zoning Code support the conclusion that its drafters did not intend for the commercial boarding of horses to be a permitted primary use in an R-1 zoned district. For example, section 5-1-2 explains the "intent and purpose" of the Zoning Code and provides that it is "[t]o promote and protect the public health, safety, *** convenience and the general welfare of the people. *** [P]revent congestion *** overcrowding of *** residential, *** areas *** from harmful encroachment by incompatible *** inappropriate uses." Village of Barrington Hills Zoning Ordinance § 5-1-2.

¶ 38       In addition, subsection 5-3-4(D), entitled "Home Occupation," explains that the residential tranquility of the neighborhood must remain paramount when a business is conducted from the principal building. Village of Barrington Hills Zoning Ordinance § 5-3-4(D) (added June 26, 2006). Subsection 5-3-4(D)(2) defines "home occupation" in pertinent part as "any lawful business, *** occupation *** conducted from a principal building or an accessory building in a residential district that *** [i]s incidental and secondary to the principal use of such dwelling unit for residential occupancy purposes." Village of Barrington Hills Zoning Ordinance § 5-3-4(D)(2) (added June 26, 2006). A home occupation must be conducted in a manner that (1) "provide[s] peace, quiet and domestic tranquility within all residential neighborhoods," (2) "guarantee[s] *** freedom from [the] possible effects of business or commercial uses," and (3) cannot "generate significantly greater vehicular or pedestrian traffic than is typical of residences in the surrounding neighborhood of the home occupation." Village of Barrington Hills Zoning Ordinance § 5-3-4(D)(3)(e).

¶ 39       The record reveals that commercial boarding at Oakwood Farm caused a significant increase in the traffic and noise in the neighborhood and resulted in complaints by the surrounding property owners. The record also reveals that Oakwood Farm's primary purpose is the commercial boarding of horses, which is a use that is not incidental and secondary to residential occupancy. While the Zoning Code does permit the boarding and training of horses as a home occupation, it must be done in a manner that maintains the peace, quiet and domestic tranquility within all residential neighborhoods in an R-1 zoned district. See Village of Barrington Hills Zoning Ordinance § 5-3-4(D)(3)(g) (added June 26, 2006). We find that the commercial boarding of horses does not comport with the overall intent of the Zoning Code. Therefore, the Zoning Board's decision was not clearly erroneous.

¶ 40             G. Section 5-3-4(A) Does Not Apply in This Case

¶ 41       Finally, the LeComptes also argue that section 5-3-4(A), which restricts the Village from "impos[ing] regulations or requir[ing] permits with respect to land used or to be used for agricultural purposes," applies in this case. Village of Barrington Hills Zoning Ordinance § 5-3-4 (Apr. 1, 1963). We disagree. Section 5-3-4(A) is clear that "[i]n the event the land ceases to be used solely for agricultural purposes, then, and only then, shall the provisions of the zoning title apply." Village of Barrington Hills Zoning Ordinance § 5-3-4 (Apr. 1, 1963). Here, because the LeComptes' property was used primarily for the commercial boarding of horses, which is not a use for agricultural purposes, section 5-3-4(A) of the Zoning Code did not apply. Accordingly, the Zoning Board's decision that section 5-3-4(A) did not apply was not clearly erroneous.

¶ 42             H. The LeComptes' Cases Do Not Support Their Position

¶ 43       The LeComptes rely on a number of cases to support their position. In *Tuftee v. County of Kane*, 76 Ill. App. 3d 128 (1979), the court held that the care and training of horses for show was an agricultural purpose. We find that the zoning ordinance in *Tuftee* is different from the Zoning Code in this case. Unlike the zoning ordinance in this case, in *Tuftee*, there was no definition for agriculture provided in the zoning ordinance. Therefore, because the *Tuftee* court had to resort to extrinsic sources, other cases and the dictionary to obtain a definition for terms in its zoning ordinance, it is distinguishable from this case. *Tuftee*, 76 Ill. App. 3d at 131-32. See *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999).

¶ 44       In *Borrelli v. Zoning Board of Appeals*, 941 A.2d 966 (Conn. App. Ct. 2008) the facts are also distinguishable from the facts in our case. Although the zoning regulations in *Borrelli* contained a definition for agriculture similar to the definition of agriculture in our case, the descriptive phrase following "animal husbandry" "(including the breeding and raising of horses as an occupation)" in the Village's Zoning Code is not included in the zoning ordinance in *Borrelli*. *Borrelli*, 941 A.2d at 972-73. In addition, unlike the ordinance in our case, there is no definition for animal husbandry contained in the ordinance in *Borrelli*. *Borrelli*, 941 A.2d at 972-73. Therefore, *Borrelli* is also distinguishable from this case.

¶ 45       The LeComptes also cite other Illinois cases, *People ex rel. Pletcher v. City of Joliet*, 321 Ill. 385, 388 (1926), and *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 302 Ill. App. 3d 342, 346 (1998), in support of their position. However, as the Zoning Board correctly states in its brief, these cases are also distinguishable. In both *City of Joliet* and *County of Knox*, the term "agriculture" was undefined and the courts resorted to extrinsic sources for a broad definition of those terms. *City of Joliet*, 321 Ill. at 388 (" '[a]griculture' is another indefinite word which renders the statute more or less uncertain"; as such the court resorted to the broad dictionary definition of "agriculture"); *County of Knox*, 302 Ill. App. 3d at 346 (the court applied the dictionary definition of "agriculture" used by the supreme court in *City of Joliet*).

¶ 46       Finally, the LeComptes' reliance on *Steege v. Board of Appeals*, 527 N.E.2d 1176, 1178

(Mass. App. Ct. 1988), is misplaced because the term "agriculture" was not defined and decisions from other jurisdictions are not binding on this court. *Travel 100 Group, Inc. v. Mediterranean Shipping Co. (USA)*, 383 Ill. App. 3d 149, 157 (2008). Accordingly, because the facts in the aforementioned cases are distinguishable from the facts in the instant case, we see no reason to follow these cases.

¶ 47    We find that the commercial boarding of horses is not agriculture as defined by the Zoning Code. Accordingly, we hold that the Zoning Board's decision, that the commercial boarding of horses is not agriculture and is not a permitted use in an R-1 zoned district, was not clearly erroneous. Village of Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972); § 5-5-2(A) (June 27, 2006); *Cosmopolitan National Bank*, 103 Ill. 2d at 313.

¶ 48                              III. Zoning Board's Factual Findings

¶ 49    Next, the LeComptes argue that the Zoning Board's decision contains erroneous factual findings because it did not accurately summarize comments from certain audience members who were not called to testify. The Zoning Board's factual findings are deemed *prima facie* true and correct, and its decision will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Scadron v. Zoning Board of Appeals*, 264 Ill. App. 3d 946, 949 (1994). A decision is contrary to the manifest weight of the evidence only where the reviewing court determines, viewing the evidence in the light most favorable to the agency, that no rational trier of fact could have agreed with the agency. *Scadron*, 264 Ill. App. 3d at 949. If there is any competent evidence supporting the agency's determination, it should be affirmed. *Scadron*, 264 Ill. App. 3d at 949 (citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992)). We found nothing in the record to suggest that the Zoning Board's findings were unsupported by the evidence in the record. Therefore, because there was competent evidence supporting the Zoning Board's decision, we find that its factual findings were not against the manifest weight of the evidence.

¶ 50              IV. Zoning Board's Motion to Strike Plaintiffs' Reply Brief

¶ 51    The Zoning Board argues that the LeComptes' argument regarding the Illinois Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2008)) in their reply brief should be stricken because it was not made in the administrative proceedings, in the circuit court or in its initial appellate brief. The LeComptes argue in their reply brief that the Zoning Board violated the Act when it (1) failed to vote in open meeting to have a closed session and identify the exception that allowed the closed session (5 ILCS 120/2(c)(4) (West 2008)), and (2) failed to indicate the results of the vote in the minutes (5 ILCS 120/2a (West 2008)). We find that this argument was not raised before the Zoning Board or in the complaint for administrative review; therefore, it is forfeited. *Western & Southern Life Insurance Co. v. Edmonson*, 397 Ill. App. 3d 146, 154 (2009); *People ex rel. Hopf v. Barger*, 30 Ill. App. 3d 525, 539-40 (1975) (citing *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969)). Therefore, we see no need to address that issue.

¶ 52                          CONCLUSION

¶ 53        We find (1) that the use of the land at Oakwood Farm for the commercial boarding of
horses is not agriculture as defined in section 5-2-1 of the Zoning Code (Village of
Barrington Hills Zoning Ordinance § 5-2-1 (added Dec. 18, 1972)), and (2) that since the
commercial boarding of horses is not agriculture under section 5-5-2(A) of the Zoning Code,
it is not a permitted use in an R-1 zoned district in the Village of Barrington Hills. Village
of Barrington Hills Zoning Ordinance § 5-5-2(A) (June 27, 2006). After reviewing the
record, we do not have a definite and firm conviction that the Zoning Board made a mistake.
Accordingly, we hold that the Zoning Board's decision was not clearly erroneous, and the
judgment of the circuit court is affirmed.


¶ 54        Affirmed.