(No. 18520.—Reversed and judgment of ouster.)
THE PEOPLE *ex rel.* Henry S. Pletcher *et al.* Appellants, *vs.*
THE CITY OF JOLIET, Appellee.

*Opinion filed December 21, 1927.*

MUNICIPAL CORPORATIONS—*what determines whether land is devoted to agricultural purposes within meaning of act of 1921, for annexing territory to city.* Whether land is devoted to agricultural purposes within the meaning of the act of 1921, adding section 1*a* to the act for annexation of territory to cities, does not depend on the size of the tract or the profit which comes from it or whether the owner operates it himself or hires help, and although it contains but two and one-half acres and produces but little or no income, if it is devoted exclusively to agricultural purposes it can not be annexed, under the statute, unless bounded on three sides by subdivided land also embraced in the territory to be annexed. (*People* v. *City of Joliet,* 321 Ill. 385, followed.)

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

HJALMAR REHN, State's Attorney, and SAMUEL W. KING, for appellants.

FRANK J. WISE, and SNAPP, HEISE & SNAPP, (WILLIAM D. HEISE, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal brings up for review a judgment of the circuit court of Will county in a proceeding begun by appellants attacking the validity of the annexation of certain territory to the city of Joliet. Appellants, as relators, by the State's attorney, filed an information in *quo warranto* against the city of Joliet calling upon the city to show by what authority or right it exercised governmental functions and powers over the annexed territory and the inhabitants thereof. The city filed a plea of justification, to which relators, by leave, replied double. A stipulation was filed by the parties, a jury was waived and by agreement the cause

was submitted to the court. The court rendered judgment against the relators for costs. An appeal was prosecuted to this court and the judgment was reversed and the cause remanded. (*People* v. *City of Joliet,* 321 Ill. 385.) The statute under which that proceeding was had was added to the previous act for annexing and including territory, in 1921, as section 1*a,* and among other things provided that lands used exclusively for agricultural purposes should not be embraced in a proceeding to annex territory without the written consent of the owner attached to and filed with the petition, unless such agricultural lands are bounded on at least three sides by subdivided lands also embraced in the territory to be annexed. The opinion of this court in 321 Ill. does not treat any constitutional questions then or now raised, but is based upon the contention of the relators that Henry S. Pletcher owned lands in the territory sought to be annexed, not bounded on three sides by subdivided territory, which was exclusively used for agricultural purposes, and he did not sign the petition or consent to the annexation. This court held that the evidence showed Pletcher's land was used exclusively for agricultural purposes and that it was not bounded on three sides by subdivided lands embraced in the territory annexed. When the case was reinstated on the docket of the circuit court of Will county the relators moved the court for judgment of guilty and for ouster. The court overruled the motion, and thereafter by agreement a jury was waived and the cause submitted to the court for hearing and decision. The court again found against relators and rendered judgment against them for costs, and they have prosecuted this appeal.

There have been three elections on the question of annexing the territory embraced in this proceeding. One was held April 18, 1924, one on September 6, 1924, and the one resulting in annexing the territory embraced in this proceeding was held November 25, 1924. Some of the terri-

tory covered by the petitions for the first two elections was excluded from the last, but the territory embraced in the last election was included in the other two.

The errors assigned are, (1) that the court erred in overruling appellants' motion for judgment; (2) that the statute under which the proceeding was had is unconstitutional; (3) that it was never lawfully passed by the senate; (4) the annexation was invalid because it embraced land used exclusively for agricultural purposes which was not bounded on three sides by subdivided lands embraced in the territory annexed, without the owner's written consent attached to the petition; (5) the action of the county judge in ordering the election for annexation was void as being unduly oppressive; (6) the city ordinance annexing the territory is informal, insufficient and invalid.

Some of the assignments of error other than the one that the territory annexed embraced land used exclusively for agricultural purposes which was not bounded on three sides by subdivided lands, present questions more or less serious in character, but if that error is well assigned the proceeding was invalid without regard to whether any other question has been or can be raised.

Reference is made in our former opinion to the testimony, and the court said: "No one can seriously contend that land devoted to the production of grapes and hay and oats is not used for agricultural purposes." The court said the legislature might limit the application of the section to tracts containing more than two and one-half acres but the court could not do so. As we understand, Pletcher's land was a two and one-half acre tract, approximately 300 feet square, although possibly a few feet longer one way. We have reached the conclusion arrived at in our former decision, that the land of Pletcher was devoted exclusively to agricultural purposes. Pletcher is, and has been for several years, superintendent at the Moore Bros. Stove Company, in Joliet. He purchased his two and one-half acres in the

fall of 1922 and began the erection of a building on the premises in the fall of 1923 to be occupied as a home. Since its completion he has occupied it as his residence, and it is about 35 feet from his south line. He planted some of the tract east and north of the house in grape vines. The vines extend to within 20 or 30 feet of the north line and occupy about four-fifths of an acre. He also planted cherry and pear trees and strawberries. Some of the trees were planted among shrubbery, and about an acre of the tract was seeded to timothy and clover, and oats were sown with the grass seed, as a nurse crop. He also built a garage. The residence and garage, and the ground occupied by them and for a lawn, comprise from one-fourth to one-third of an acre. The two and one-half acre tract was enclosed with a barbed wire fence as one tract. Pletcher owned no livestock and no agricultural implements except garden cultivators and small tools. He testified he intended hiring the cultivation and harvesting of the crops. There is some discrepancy in the testimony about when the grape vines and strawberries were planted and the grass sown. It is not clear whether this work was done in the fall of 1923 or the spring of 1924. While that is not conclusive of the question whether the land was used exclusively for agricultural purposes, Pletcher testified the grape vines were planted in 1923, and we are of opinion that the weight of the evidence so shows. He testified he sold three crops of hay off the land in the years 1924, 1925 and 1926. The oats raised were cut and taken by a man named Anderson, and, as we understand the proof, he gave Pletcher some straw for them to mulch his strawberry plants. The strawberry plants were set out in the spring of 1924. According to Pletcher's best recollection the only thing he received for a crop in 1924 was five dollars for hay sold to an Italian, who cut it himself with a scythe.

George Abbott, who is a landscape gardener, testified he laid out the grounds for trees, planted grapes and fruit

trees and seeded part of it to timothy and clover. He testified he thought that was in 1924. The residence was near the first 100 feet of the south line. Grape vines were planted on the east part, east of the house, and extended to within about 20 feet of the north line. He could not remember how many grape vines were planted but said there were several hundred of them. The northwest portion of the tract was seeded in grass—a mixture of timothy, clover and oats. The oats were sowed with the grass seed to keep the weeds down. Pletcher told witness during the year 1924 that the north acre of the tract was for sale. Witness had a mortgage on the tract, and Pletcher wanted him to consent to release it on the north portion of the tract and retain it on the part occupied by the residence and garage. Witness testified the land seeded to grass would produce probably a ton and a half of hay, which was worth, standing, eight or nine dollars. The object of sowing the land to timothy and clover was to make better feed. The land around the buildings was also sowed in grass but not the same way. It was sowed to red-top, blue grass and white clover. Witness testified Pletcher planted a lot of stuff himself. He did not know what he planted prior to September 9, 1924,—the time the petition in this case was presented to the county court. He had some strawberries. Witness never had occasion to measure the extent of them. We think no significance can be attached to the fact that Pletcher transplanted some of the grape vines after the election was held to annex the territory.

Benjamin Bruning, a witness for the city, testified he was in the real estate and insurance business with Fred J. Walsh. In 1924 he talked with Pletcher about his land and about selling him and Walsh Pletcher's frontage. He said they went out, staked out the land and arranged prices on the lots on the part of the tract facing Jefferson street, which is known also as the Troy road. He and Pletcher used a tape line in staking the lots. Pletcher had a blue-

print of Hyde Park which showed his land. Witness tes-
tified the next time he saw Pletcher he had it all laid out
on paper. There were no buildings on the part of the tract
staked out. He thinks the time was June, 1924, when they
staked out the lots. There was grass on the land, but he
did not remember trees. On the balance of Pletcher's land,
in addition to the buildings, there were some grape vines but
no vines on the tract they staked out. Pletcher said he
would sell the lots. They were merely marked down in
lead pencil. Witness did not remember any blue-prints on
the two and one-half acre tract and did not remember any
strawberry plants. He and his employer, Walsh, favored
annexation from the start. Walsh circulated the petition
for annexation and made the affidavit of posting notices of
the election. Witness worked for annexation and hauled
people to the polls all the day of the election. There never
was any subdivision or plat of a subdivision made of any
part of the land. Pletcher testified he and Bruning did not
stake out any lots but simply measured distances with a
tape line to ascertain how many lots the property would
make if it were subdivided and annexed to the city. He
apparently thought that was a possibility from the numer-
ous efforts being made to annex it, and it was with that
thought in mind he transplanted some of his grape vines
in 1925.

The above is not a detailed resume of the evidence, but
we believe it is enough of the material testimony to deter-
mine what purpose the land was devoted to.

Appellee printed in its brief an extract from a written
opinion delivered by the trial judge. In the opinion the
court sets out what is said to be testimony in addition to
that heard on the former trial. He says the additional
testimony shows the oats were not planted for agricultural
purposes but as a nurse crop for the grass; that prior to
the annexation Pletcher had received five dollars from the
land; that the strawberry patch was 15 or 20 feet wide and

40 feet long and not designed for commercial use; that
Pletcher transplanted some of the grape vines, evidently
with a view to selling the lots staked off informally; that
he requested Abbott to release his mortgage upon the pro-
posed lots; that Pletcher has no other property used in con-
nection with the two and one-half acres; that no wagons,
agricultural implements or tools are kept or used on the
premises, and no stock of any kind, and no help employed.
We do not understand this additional testimony, in the light
of all the other evidence, is by any means conclusive that
the land was not used exclusively for agricultural purposes.
That the owner received but little money for crops raised
surely does not affect the question of what the land was
used for. Many farmers who own farms and live miles
from a city, at least part of the time, do not receive much
money for crops raised, and sometimes really raise no crops
to sell at all. If the land was not used exclusively for agri-
cultural purposes, we ask for what purpose was it used?
It was not a suburban home, the grounds of which were
ornamented with shrubs, trees, flowers, drives, etc. It was
just two and one-half acres of land upon which Pletcher
lived as a home, and he planted on the ground not occupied
by buildings and lawn, grape vines, fruit trees and straw-
berries. The fact that not exceeding two acres of it was
devoted to that purpose does not make it land not used
exclusively for agricultural purposes. Although Pletcher
did not, up to the time of the hearing, receive any consider-
able returns from the land, he testified he intended to sell
the crops raised on the land and intended hiring the work
done to raise the crops. The greater part of an acre was
planted to grape vines. Pletcher testified, before he bought
the land he had raised grapes and strawberries on another
place for commercial use. It cannot be said that the pur-
pose to which land is devoted depends upon the size of the
tract or the profit which comes from it. In our former
opinion we said: " 'Agricultural' is another indefinite word

which renders the statute more or less uncertain. The definition given by Webster is, 'of or pertaining to agriculture; connected with or engaged in tillage.' 'Agriculture' is defined as the 'art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In this broad use it includes farming, horticulture and forestry, together with such subjects as butter and cheese-making, sugar-making, etc.' Unless restricted by the context, the words 'agricultural purposes' have generally been given this comprehensive meaning by the courts of the country. [Citing cases.] The words 'agricultural purposes' are descriptive of the nature of the use to which the land is put, [citing cases,] and so the amount of land involved would have no bearing on the meaning of the words." That Pletcher himself was most of his time otherwise employed cannot be determinative of the question. Much land devoted to agriculture is farmed by hired help. The greater part of the two and one-half acre tract was not devoted to or used for any other purpose than agriculture, and we see no reasonable basis upon which it could be held otherwise. If we are correct in this conclusion, as said in our former opinion, "it is not necessary to a proper disposition of this case to consider or determine the constitutional questions presented," as that one defect in the proceedings is a bar to annexation.

The judgment will be reversed and judgment of ouster entered here.

*Reversed and judgment of ouster.*