THE COUNTY OF LAKE *et al.*, Plaintiffs-Appellants, *v.* CARL W. CUSHMAN, Defendant-Appellee.

Second District (1st Division)    No. 75-234

Opinion filed August 17, 1976.

Jack Hoogasian, State's Attorney, of Waukegan (Michael Sieman and William Sachen, Assistant State's Attorneys, of counsel), for appellants.

Carl W. Cushman, of Wauconda, *pro se*, Adler, Anderson & Merker, of Bloomington, Lewis D. Clarke and Clayton P. Voegtle, both of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The issue in the case is whether a poultry hatchery is an "agricultural use," or, stated otherwise, whether the County of Lake can under its zoning ordinance prevent the defendant landowner from building a poultry barn on his 3.09-acre lot in view of the express provision of an act relating to county zoning barring any county regulation, other than set back, of structures used or to be used for "agricultural purposes." The trial court held that it could not. We agree and affirm.

On August 13, 1974, the defendant Carl W. Cushman applied for a permit for the construction of a poultry barn on a 3.09-acre parcel of land located in Lake County. The property in question is zoned agriculture under the Lake County Zoning Ordinance as is all of the surrounding property. Under the ordinance, a poultry hatchery is a permitted use by right in an area zoned agricultural; indeed the ordinance defines agriculture as "the tilling of soil; the growth of any kind, including forestry; the maintenance of nurseries and green houses; the raising of livestock, poultry, and fur-bearing animals; and incidental structure for carrying out the same." However, the permit was not issued because the defendant's property, being only 3.09 acres in size, was smaller than the minimum 200,000 square feet required for agricultural uses by the ordinance. Believing himself protected by the provision in the Illinois Revised Statutes 1973, ch. 34, par. 3151, providing that the powers of the act shall not be exercised "so as to impose regulations or require permits with respect to land used or to be used for agricultural purposes, or with respect to the erection * * * of buildings or structures used or to be used for agricultural purposes upon such land," the defendant proceeded with the building. The footing foundations were poured on August 21, 1974. The building was red tagged the following day by the Lake County and Zoning Department. The defendant had a conference with the department and received no further word in regard to the building until the walls were poured on October 28, 1974, at which time the building was again red tagged. On October 30, 1974, the County of Lake filed the present action against the defendant.

The trial, by agreement of the parties, was an informal bench trial. Many of the pertinent facts were presented in the briefs and attachments to the briefs rather than in the testimony and exhibits adduced at trial.

The defendant's proposed use of the premises would be for the construction of a frame 40 x 40 ft. poultry hatchery with prepainted aluminum siding. The operations would be conducted from February through June. Eggs would be imported from Iowa by truck and placed in incubators. The building would handle 5,000 eggs. Starter food would be purchased. The chicks would be sold, generally to farmers, at two

intervals, some at 21 days and the remainder at 6 weeks of age. The operation would be confined completely inside the building. No employees would be hired as only the defendant and his sons would work there.

In the past, the Cushman Farm has consisted of as many as 20 small tracts totaling 79 acres but at present there are only two 3-acre tracts remaining. According to the defendant's trial court brief he actively farmed on the property from 1935 through 1970 and from 1939 through 1961 there was a poultry raising and laying hen operation on the farm. For the past 4 years there has been a garden on the property covering about one-third acre; the defendant intends to double this when the drainage in the area is improved. In the past, the defendant has also planted Scotch Pine seedling trees and Red Pine trees for sale as Christmas trees on the property. Approximately three-fourths of an acre of that planting remained at the time of the trial. The defendant's tractor, plow, disc and other farm implements which are used on the property are stored at the other farmstead.

The property is situated on Fairfield Road, a heavily travelled county highway. The evidence as to the use of the property in the area was conflicting but it would appear that while there are several residences in the area, one neighbor keeps goats, another keeps feeder cattle and harvests hay on an 11-acre parcel, that on another 1,000 laying hens are confined in a barn, and on others crops are grown. There is a horse stable and arena across from the defendant's property.

■■ Under the provisions of the ordinance any lot less than 200,000 square feet in size in an area zoned "Agriculture" is a nonconforming lot. The only principal permitted use on a nonconforming lot in an "Agriculture" zone is a single-family dwelling; in other words despite the clear language of the statute the ordinance attempts to bar any and all agriculture uses if the lot is less than 5 acres in size. This cannot be done. No rights exist and no powers are conferred with respect to zoning except by statute (*People v. Ferris* (1958), 18 Ill. App. 2d 346, 152 N.E.2d 183), and the county board is bound by the powers, conditions and restrictions contained in the Act. (*County of Lake v. Cuneo* (1947), 333 Ill. App. 164, 76 N.E.2d 826.) The County argues that the statute is silent as to whether acreage limitations may be imposed on agricultural uses. But in fact the contrary is true. The statute clearly provides that there can be no regulation of any land or buildings used for agricultural purposes except that building or set back lines may be regulated. Nor can the power to impose such a limitation be read into the statute on the theory that the legislature only meant the term "agriculture" to apply to large farms. In *People ex rel. Pletcher v. City of Joliet* (1926), 321 Ill. 385, 152 N.E. 159, our Supreme Court, at page 389, said:

"* * * The words 'agricultural purposes' are descriptive of the nature of the use to which the land is put, (*Lerch v. Missoula Brick and Tile Co.* 45 Mont. 314, 123 Pac. 25,) and so the amount of land involved would have no bearing on the meaning of the words. * * * If the legislature desires to limit the application of the words to tracts containing more than two and one-half acres then it must fix the limitation. We have no authority to do so."

■■ Accordingly, the real issue in this case is whether a hatchery on a 3.09-acre lot can be considered an "agricultural use" within the meaning of the statute generally exempting land and buildings used or to be used for agricultural purposes from zoning regulations by the county. We agree with appellant that the definition of "agriculture" in the *ordinance* is not binding on the court as to the meaning of the *statute*. A county board can hardly dictate to the legislature what is the import of a statute nor can it change the import and meaning of the statute by the enactment of an ordinance. The cases cited by *amicus curiae* are not in point for they involve situations where the definition was in the same statute or ordinance. We can take notice, however, of the fact the county has treated poultry raising as agricultural and has in no way distinguished it from any other agricultural use. As already noted, the acreage limitation was applied to all agricultural uses not just to poultry raising.

The term "agriculture" was long ago defined by our Supreme Court as:
" 'Agriculture' is defined as the 'art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In this broad use it includes farming, horticulture and forestry, together with such subjects as butter and cheese making, sugar making, etc.' Unless restricted by the context, the words 'agricultural purposes' have generally been given this comprehensive meaning by the courts of the country."
*People ex rel. Pletcher v. City of Joliet* (1926), 321 Ill. 385, 388-89, 152 N.E. 159; *People ex rel. Pletcher v. City of Joliet* (1927), 328 Ill. 126, at 132, 133, 159 N.E. 206; definition affirmed, *Forsythe v. Village of Cooksville* (1934), 356 Ill. 289, 291, 190 N.E. 421; see also *County of Grundy v. Soil Enrichment Materials Corp.* (1973), 9 Ill. App. 3d 746, 292 N.E.2d 755; *Oak Woods Cemetery Association v. Murphy* (1943), 383 Ill. 301, 50 N.E. 2d 582.

Likewise in 28 Ruling Case Law §11, at 718 (1921), "Agriculture" was defined as including the use of land for any purpose of husbandry inclusive of the keeping or breeding of livestock, poultry or bees.

■■ These definitions were well settled and known by the legislature

at the time of the enactment of this statute in 1935. And "[w]hen the words have a well settled meaning through judicial interpretation, they must be understood, when used in a statute, to have that meaning unless a different meaning is unmistakably indicated." (*Murrell v. Industrial Com.* (1920), 291 Ill. 334, 336, 126 N.E. 189.) As stated by the courts in *United States v. Turner Turpentine Co.* (5th Cir. 1940), 111 F.2d 400, 404-05, and *Florida Industrial Com. v. Growers Equipment Co.* (1943), 152 Fla. 595, 603-04, 12 So. 2d 889, at 893-94, in interpreting a different statute:

"It is now a settled principle of statutory construction that Congress or a legislature in legislating with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the act will apply, that is, the needs and usages of such activity. When then, Congress in passing an Act like the Social Security Act, uses, in laying down a broad general policy of exclusion, a term of as general import as 'agricultural labor,' it must be considered that it used the term in a sense and intended it to have a meaning wide enough and broad enough to cover and embrace agricultural labor of any and every kind, as that term is understood in the various sections of the United States where the act operates. This does not mean of course, that a mere local custom which is in the face of the meaning of a general term used in an Act, may be read into the Act to vary its terms. It does mean however, that when a word or term intended to have general application in an activity as broad as agriculture, has a wide meaning, it must be interpretated broadly enough to embrace in it all the kinds and forms of agriculture practiced where it operates, that its generality reasonably extends to. Definitions of agriculture in standard texts and treatises and in decisions in these latter years, have had the widest content. * * *

An examination of the cases cited in Words and Phrases, Fifth Series, Vol. 1, p. 339 et seq., under agriculture and in 3 C.J.S., Agriculture, pages 361, 365 and 366, par. 1 under 'agricultural' and 'agriculture,' convinces that in modern usage this is a wide and comprehensive term and that statutes using it without qualification, must be given an equally comprehensive meaning."

There have been no Illinois cases determining whether the raising of chickens in a hatchery constituted "agriculture." In other states, however, the term "agricultural" has generally been broadly applied to cover the raising of chickens in a chicken house or hatchery. Thus in *Franklin v. McCoy* (1962), 234 Ark. 558, 353 S.W. 2d 166, the raising of chickens was held to constitute "agricultural farm labor" although the farmer who had eight chicken houses containing approximately 75,000 chickens at a given time raised no crops on the land and the feed was not raised on the land.

Likewise the court in *Fleckles v. Hille* (1925), 83 Ind. App. 715, 149 N.E. 915, ruled that "agricultural" included the raising, feeding and management of live stock or poultry and the fact the appellant specialized in the production of poultry (about one-quarter of his land, like the defendant's was under cultivation), did not take him or his employees out of the agricultural class. In *Fidler v. Zoning Board of Adjustment* (1962), 408 Pa. 260, 182 A.2d 692, the construction of 15 "pole barns" for the raising of 40,000 to 50,000 turkeys was held permissible as being agricultural although only feed for 3,000 to 4,000 turkeys would be grown on the land, the court pointing out that if the fact that only a small quantity of the needed feed is cultivated were controlling, an ordinary dairy farm would be precluded if it purchased the necessary needs of the stock from outside sources.

Furthermore the application of the term "agricultural purpose" has not been restricted by the Illinois courts to the growing of crops on the land in question. Thus the court in *Soil Enrichment Materials Corp. v. Zoning Board of Appeals* (1973), 15 Ill. App. 3d 432, 304 N.E.2d 521, held that the construction of a four million gallon holding pot, pump house and associated controls for sewage sludge which would be brought in by railroad car, stored on the site and then pumped to surrounding farmlands for application to the soil was an agricultural use; the plaintiff's main business was the disposing of sludge.

*Oak Woods Cemetery Association v. Murphy* (1943), 383 Ill. 301, 50 N.E.2d 582, cited by the plaintiff is not in point. That case while employing the same definition of agriculture as had *Joliet* held that employees of a greenhouse which was operated as an auxiliary to the cemetery's principal business and was an integral part of it were not engaged in "agricultural labor" under the Unemployment Compensation Act. As pointed out by the court, the reasons for exempting "agricultural labor" for the scope of that statute included the expense and inconvenience of collection, the fact that farmers are not likely to maintain adequate employment records, and its seasonal character and none of these reasons were present in that case. In this case the defendant is not attempting to run a hatchery as part of a larger business. Furthermore the purposes of the statutory exemption in that case were, as the court pointed out, different from that of other statutes.

The plaintiff has also cited cases from other jurisdictions including *Whitpain Tp. v. Bodine* (1953), 372 Pa. 509, 94 A. 2d 737; *Chudnov v. Board of Appeals* (1931), 113 Conn. 49, 154 A. 161; *Town of Lincoln v. Murphy* (1943), 314 Mass. 16, 49 N.E. 2d 453; *Colasuonno v. Dassler* (1944), 51 N.Y.S. 2d 870, 183 Misc. 904, *Johnson v. DeBaun* (1954), 206 Misc. 806, 135 N.Y.S. 2d 217; *Town of Mount Pleasant v. Van Tassell* (1957), 7 Misc. 2d 643, 166 N.Y.S. 2d 458, *aff'd without opinion*, 6 App.

Div. 2d 880, 177 N.Y.S.2d 1010; as holding that the raising of chickens or pigs as an independent or dominant enterprise was not farming within the meaning of the ordinance allowing "farming" in certain districts. None of these cases is in point because the term "agriculture" is broader in meaning than "farming" (*Town of Lincoln v. Murphy* (1943), 314 Mass. 16, 49 N.E.2d 453; *Lowe v. North Dakota Workmen's Compensation Bureau* (1936), 66 N.D. 246, 264 N.W. 837; *United States v. Turner Turpentine Co.* (5th Cir. 1940), 111 F.2d 400; 3 Am. Jur. 2d *Agriculture* §1 (1962); and see *Fidler v. Zoning Board of Adjustment* (1962), 408 Pa. 260, 182 A.2d 692) and includes as well horticulture, viticulture, dairying, poultry, bee raising and ranching. (3 Am. Jur. 2d *Agriculture* (1962) §1.) One may be employed in agriculture and not be a farmer in the ordinary sense of the term nor even a farm laborer. (*Lowe v. North Dakota Workmen's Compensation Bureau* (1936), 66 N.D. 246, 264 N.W. 837.) Indeed it can be assumed that the legislature deliberately chose to employ the broader term "agriculture" because of the narrower connotation given the term "farm" in cases such as *Chudnov*. Furthermore, these cases involved not statutory exemptions from county zoning but the permitting under zoning ordinances of farming, greenhouses, etc., in area zoned residential. As pointed out in *Colasuonno v. Dassler* (1944), 183 Misc. 904, 51 N.Y.S. 2d 870, the primary purpose of the residence district created by a zoning ordinance is to insure and promote a safe, comfortable and healthful atmosphere of family life rather than the development of a commercial enterprise and the pursuit of pecuniary profit.

The only two cases cited by the plaintiff which found chicken raising not to be "agricultural" are *Welsh v. Flo* (1937), 146 Kan. 807, 73 P.2d 1084, and *Farmegg Products, Inc. v. Humboldt* County (Iowa 1971), 190 N.W.2d 454. In *Welsh*, the court, while agreeing that there could be no question that the raising of chickens fell within the term "agricultural," refused to permit the keeping of more than 1200 hens on a residential lot of less than 1½ acres where a restrictive convenant provided that property should be used for residence, gardening and other agricultural purposes.

In *Farmegg Products*, the court did hold that chicken raising was not an "agricultural purpose" under a statute exempting such property from county zoning regulations. That case is distinguishable from the instant case because the statute there provided

> "*Farms* exempt. No regulation or ordinance adopted under the provisions of this chapter shall be construed to apply to land, *farm* houses, *farm* barns, *farm* outbuildings or other buildings, structures, or erections which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used * * * ." (Emphasis ours.) (190 N.W.2d 454, 455.)

and the court found not only that the use was not for agricultural purposes

but that the land was not primarily adapted for agriculture. It is further distinguishable in that there the word "farm" appears four times in the text, and "agriculture" only once. Incidentally, the dissent in that case seems more convincing to us.

■■ The plaintiff argues that the legislature could not have intended to allow a hatchery on a 3-acre area and that minimum lot restrictions should be allowed to protect the surrounding properties from the impact of the operation. Considering the other agricultural activities in the area, including the horse stable, it is difficult to see how a poultry barn or hatchery could further devalue the area, particularly since the operation will be confined completely inside the building. But, even if it did, as stated in *Moulton v. Building Inspector* (1942), 312 Mass. 195, 197-98, 43 N.E.2d 662, 663-64:

> "The exemption from the operation of the zoning by-law of any 'agricultural use, selling only produce raised on the premises,' is complete and unconditional, except as therein stated. It is not limited to agricultural uses that do not injure a residential neighborhood. We have no right to assume that agricultural uses were permitted in the belief or upon any implication that they would not be injurious. It is obvious that various incidents or uses indubitably to be classed as agricultural may be detrimental to a residential neighborhood. We need mention only the use of ordinary fertilizers. So far as we know the town for reasons deemed by it sufficient deliberately intended to prefer agricultural over residential uses. At all events we must take the by-law as written. There is no mystery about the words 'agricultural use.' They are everyday words and should be interpreted 'according to the common and approved usages of the language * * * without enlargement or restriction and without regard to [the court's] own conceptions of expediency.' (citations omitted) We are not to seek for any peculiar, abstruse, or constricted signification. These words include all uses of land that in common speech and acceptation would be described as agricultural, no matter how injurious they may be to a neighborhood of homes. The test is whether the use is agricultural and not whether it is detrimental."

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.