VAN CLIEF et al. *v.* COMPTROLLER

[No. 16, October Term, 1956.]

*Decided November 8, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*James A. Ostendorf,* for appellants.

*Frank T. Gray, Assistant Attorney General,* and *Edward F. Engelbert, Counsel for Retail Sales Tax Division,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court affirming an order of the Comptroller of the State of Maryland, (the Comptroller), which denied a claim for refund of retail sales tax paid by the appellants.

The facts of the case are substantially as follows. The appellants, one of whom owns Nydrie Farm and Stud, and the other the owner of Claiborne Farm, purchased a brood mare named "Leading Home" at Timonium on November 6, 1954, at which time the sales tax was paid. "Leading Home" was a racing mare at the ages of two, three, four and five years. She was bred in 1952 and produced a colt in 1953. No attempt has been made to replace her in training for racing since 1951. The aim of breeding "Leading Home" was to produce race horses. On May 16, 1955, a claim for refund of the

sales tax paid on "Leading Home", on the ground that the sale was exempt, was forwarded to the Comptroller which claim was disallowed by him. A formal hearing was held on June 23, 1955, and on July 13, 1955, the claim for refund was denied by the Comptroller. An appeal was taken to the Baltimore City Court and from an order affirming the Comptroller and denying the exemption the appellants appeal.

Under Code, 1951, Article 81, Section 322, (Exemptions), in effect when this sale was made, it is provided that the sales tax shall not apply to Sub-section (h), which is as follows: "Sales of livestock, poultry, seeds, feeds for livestock and poultry, fertilizers, lime and land plaster used for agricultural purposes; and the products of the farm, dairy, grove or garden, except those products which are usually sold by nurseries and horticulturists, including, but not limited to, flowers, sod, decorative trees and shrubs." Some question has arisen as to whether the words "used for agricultural purposes" apply to all the items in Sub-section (h), *supra,* preceding those words or whether they merely apply to "lime and land plaster". As evidenced by Code, 1955 Cumulative Supplement, Article 81, Section 322(h), Acts of 1954, Chapter 5, Sub-section (h), was somewhat modified because apparently there was a feeling that the former exemption was not very definite in its terms. For the purposes of this case we will assume that, under the provision of Sub-section (h), *supra,* in effect when the sale was made, the exemption applied only to sales of livestock used for agricultural purposes.

Rule 50, of the Official Rules and Regulations promulgated by the Comptroller, and in effect when the sale in this case was made, provides: "For the purpose of this Act, livestock means domestic animals kept for agricultural purposes." The question before us is whether a brood mare, kept and bred for the purpose of producing colts, is kept for agricultural purposes.

The appellee relies on two English cases, *Bolt v. Heywood,* 114 L. T. Jour. 294, 5 W. C. C. 151, and *Grant v. Ward,* 7 W. C. C. 128. In the first case it was held that the mere keeping of horses by a hotel proprietor and cutting up hay, which was fed to the horses of the proprietor and to travelers'

horses, was not agriculture. In the second case it was held that a groom who looked after horses kept in stables, except when they were being exercised, was not employed in the use of land for the purpose of keeping or breeding livestock. In *Robert v. Adams,* 38 Cal. 383, 99 Am. Dec. 413, relied on by the appellee, the California law provided an exemption from execution generally of farming utensils and implements of husbandry. It was there held that a stallion kept for breeding purposes and not used as a work horse was not included in the exemption. To the same effect see the case of *Krieg v. Fellows,* 21 Nev. 307, 30 Pac. 994.

However, in *Boland v. Cecil,* 65 Cal. App. 2d Supp. 832, 150 P. 2d 819, the plaintiff was the owner of one-half acre of land on which he raised chickens, rabbits, pigs, sheep, ducks, a horse and cattle. It was there held that there was sufficient evidence from which the court could find that the plaintiff was a "livestock producer" within the meaning of the State Agricultural Code exempting livestock producers from the requirement of having slaughtered cattle inspected where the meat was intended for the livestock producer's own consumption or for distribution to private parties in the immediate vicinity as long as the slaughtered animal was part of the livestock producer's own herd and healthy at the time it was killed, and therefore the plaintiff was entitled to recover a slaughtered cow which had been seized by state officers for an alleged violation of said Agricultural Code. The court reached its result by referring to Webster's Dictionary for definitions of "livestock" and "producer": Livestock—"Domestic animals used or raised on a farm, especially those kept for profit." Producer—"One who produces, brings forth or generates." *In re Dunkly,* D. C. N. D. Cal., 64 F. Supp. 10, was a case where the petitioners operated a fish hatchery producing trout for commercial purposes. They claimed the benefit of a proceeding for composition with creditors under Section 75 of the Bankruptcy Act which provides in part: "* * * the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of

poultry or livestock * * *." The petitioners relied on the term "livestock". On a motion to dismiss the above proceeding by two of the listed creditors, it was held that fish are not livestock and therefore the petitioners were not farmers within the meaning of Section 75 of the Bankruptcy Act. The Court pointed out that Webster's Dictionary limits the definition of livestock to domestic animals. Fish are *ferae naturae*. In *Meader v. Unemployment Compensation Div.*, 64 Idaho 716, 136 P. 2d 984, it was held that livestock included the more ordinary forms of domesticated animals such as cattle, sheep, horses and hogs and did not include trout and spawn. In U. S. C. A., Title 7, Section 182, "livestock" is defined as "* * * cattle, sheep, swine, horses, mules, or goats—whether live or dead; * * *."

In *Tucker v. Newman*, 217 Minn. 473, 14 N. W. 2d 767, it was held that employment on a mink and fox farm did not make the employee, a farm laborer, exempt under the Workmen's Compensation Act of Minnesota. In 3 *C. J. S.*, page 365, it is stated that "agriculture" consists of cultivating the ground, including harvesting of crops and rearing and management of livestock. In *Hight v. Industrial Commission*, 44 Ariz. 129, 34 P. 2d 404, agriculture was defined to include rearing and care of livestock. To the same effect, among other cases, are *People v. City of Joliet*, 321 Ill. 385, 152 N. E. 159; *Davis v. Industrial Commission*, 59 Utah 607, 206 Pac. 267, 268; *People v. City of Joliet*, 328 Ill. 126, 159 N. E. 206; *State v. Stewart*, 58 Mont. 1, 190 Pac. 129; *Slycord v. Horn*, 179 Iowa 936, 162 N. W. 249; and *Binzel v. Grogan*, 67 Wis. 147, 29 N. W. 895. Webster's New International Dictionary, 2nd Edition, 1951, defines livestock as "Domestic animals used or raised on a farm, especially those kept for profit." The same definition of livestock is given in 54 *C. J. S.*, page 635. In *DeFontenay v. Childs*, 93 Mont. 480, 19 P. 2d 650, it was held that land used for grazing horses was used for agricultural purposes within a homestead exemption statute, although horses were not used in tilling the soil or for other agricultural pursuits. We therefore conclude that the weight of authority in other jurisdictions is that agriculture includes the rearing, feeding, and management of horses.

Rule 71, of the Official Rules and Regulations promulgated by the Comptroller, in effect when the sale here was made, provides that "The Maryland Sales Tax applies to the sale of race horses in the State of Maryland and the tax is also to be paid on the claiming price of any horses which are claimed at any racing meet held in Maryland." There is no contention that "Leading Home" was a race horse at the time of the sale here. In *Burton v. Comptroller of the State of Maryland,* decided by Judge Charles Marbury sitting in the Circuit Court for Prince George's County, Daily Record, January 15, 1949, the sales tax act then in force provided "Sales of livestock, poultry, seeds, feeds for livestock and poultry, fertilizers, lime and land plaster used for agricultural purposes, and the products of the farm, dairy, grove or garden" should be exempt from the tax. There the defendant promulgated a rule in reference to this exemption to the effect that it did not apply to the sales of "flowers, decorative trees and shrubs, holly or Christmas trees, all such items are subject to the tax when sold at retail". There the plaintiff sold top soil, decorative trees and shrubs, one fruit tree, sod, grass seed, lime and fertilizer produced at his nursery and the defendant assessed him with a sales tax which he paid under protest. In an action to recover the tax paid under protest it was held that the plaintiff was entitled to recover, the rule promulgated by the defendant in reference to the exemption being in excess of his authority. Judge Marbury there said: "The difficulty which the Comptroller seems to have gotten into in attempting to restrict Sec. 261(h) by promulgating Rule 75 seems to arise from the use to which these three special farm products are put. But if the use of agricultural products entered into the question of taxability, it would result in hopeless confusion." The Court in answering the Comptroller's argument that the exemption should be limited to products of the farm for human consumption, pointed out that typical farm products such as tobacco, soy beans, wheat, rye, skimmed milk, etc., often are raised especially for industries which have nothing whatsoever to do with food for human consumption. The Court concluded on this note: "If it is desirable to restrict products of the farm so as to exclude

decorative trees and shrubs, as well as sod, so as to withdraw them from the exemptive feature of the statute, the power to do this rests with the Legislature and not the Comptroller or the Courts in construing his administrative rule." Immediately following the decision of the case, the statute was amended to expressly exclude flowers and decorative trees from the exemption provision.

In *Keeney v. Beasman,* 169 Md. 582, 182 A. 566, 103 A. L. R. 1515, the question before the Court was whether an employee on a farm, *Merhl Keeney,* was engaged in farm labor so as to be exempted from the Workmen's Compensation Act. The farm, consisting of six hundred acres, part in woodland, part in pasture and the remainder in grass and grain, was utilized for the production of milk which was sold in bulk and bottles. The crops raised on the farm were fed to the cattle. The employee, at the time of the accident, was engaged in removing a stump from an alfalfa field. He contended that dairying was not farming or connected with agriculture and that he was not a farm laborer. Judge Offutt, in a very exhaustive opinion in which many authorities were reviewed, in holding that Keeney was a farm laborer, defined agriculture as follows: "Literally, *agri cultura* means the tillage or cultivation of the soil. But, like many words compounded of different elements, it has a meaning of its own broader than that of its elements considered separately, for from time immemorial it has been regarded as synonymous with husbandry, and includes, not only the cultivation of the soil and the raising of crops, but also 'gathering in the crops and raising live stock' (*Oxford Dictionary*), and, as a natural concomitant of those activities, marketing the products of the soil, the increase and the products yielded by the stock, such as wool and milk. That has been so from the earliest times." He also quoted a definition of agriculture from *Rawle's Edition of Bouvier's Law Dictionary,* which included the following: " '* * * farming, including any industry practised by a cultivator of the soil in connection with such cultivation, as breeding and rearing of stock, dairying,' etc." He also relied on the case of *Philadelphia v. Davis,* 6 Watts & S. (Pa.) 269, 279, where farm products were held to include horses, and on *Davis v. Industrial Commission,* 59

Utah 607, 206 P. 267, *supra,* holding that a sheep herder was an agricultural laborer.

We must therefore conclude in this case that the brood mare kept by these farm owners for the purpose of producing colts for sale was livestock "used for agricultural purposes" and was therefore exempt from the Maryland Sales Tax.

*Order reversed, with costs.*