WIGGINS, Justice
(dissenting).
I respectfully dissent. When applying the correct legal standard, substantial evidence does not support the Linn County Board of Adjustment’s findings.
The controlling statute is Iowa Code section 335.2, which “prohibits counties from zoning agricultural land and structures.” Goodell v. Humboldt County, 575 N.W.2d 486, 491 (Iowa 1998). Identifying the proper standard to use for determining whether an applicant is entitled to an agricultural exemption under section 335.2 is a matter of statutory construction.
When construing a statute, we must determine legislative intent. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). We ascertain “‘legislative intent from the words chosen by the legislature,’ ” not by what the legislature should have or might have said. State v. Dohlman, 725 N.W.2d 428, 431 (Iowa 2006) (quoting Auen, 679 N.W.2d at 590). We “may not extend, enlarge or otherwise change the meaning of a statute” under the guise of construction. Auen, 679 N.W.2d at 590. Generally, we presume the legislature intended to change existing law when it adopts an amendment. Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Comm’n, 160 N.W.2d 825, 831-32 (Iowa 1968).
The general assembly adopted section 335.2 in 1947.[7] See 1947 Iowa Acts ch. 184, § 2 (codified at Iowa Code § 358A.2 (1950)). The statute originally read as follows:
No regulation or ordinance adopted under the provisions of this act shall be construed to apply to land, farm houses, farm barns, farm outbuildings or other buildings, structures, or erections which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used.
Id. (emphasis added). Accordingly, the original version of the statute contained a two-part test. The first part focused on the adaptation “by reason of nature and area, for use for agricultural purposes.” The second addressed whether the applicant for the exemption used the land or structures adapted for agricultural purposes “as a primary means of livelihood.” This second part required county zoning administrators to “inquire into the sources and amounts of income of each applicant for [an exemption].” Note, “III Blows the Wind that Profits Nobody": Control of Odors from Iowa Livestock-Confinement Facilities, 57 Iowa L.Rev. 451, 496 (1971) [hereinafter III Blows the Wind]. Of the two parts, apparently the latter was more *13 important. Id. (citing 1953-1954 Iowa Att’y Gen. Biennial Rep. 96).
Although the bill containing the agricultural exemption did not explain its purpose, a predecessor bill that also contained the exemption asserted it was “ ‘intended as a protection for the farmer and his investment in his land.’ ” Goodell, 575 N.W.2d at 494 (quoting H.F. 426,1947 H.J. 587 (comments and explanation)). Accordingly, the exemption “was a significant statement of the ‘freedom to farm.’ ” Neil D. Hamilton, Freedom to Farm! Understanding the Agricultural Exemption to County Zoning in Iowa, 31 Drake L.Rev. 565, 574 (1982) [hereinafter Hamilton]. One commentator has suggested the agricultural exemption “was a political tradeoff obtained by farm leaders before passage of county zoning was possible,” because county zoning was “relatively new and untested” in 1947. Id. at 573-74. That lead to fear of the impact local zoning regulations would have on farming.
In 1963, the general assembly amended the relevant part of the statute by changing the clause, “which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used,” to the present version. 1963 Iowa Acts ch. 218, § 2. Unchanged since the amendment, the relevant provision now reads:
Except to the extent required to implement section 335.27, no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings or other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used.
Iowa Code § 335.2 (emphasis added). Thus, the general assembly made two significant changes. First, it deleted the requirement that the landowner use the land “as a primary means of livelihood.” Second, it added “primarily” as a modifier.
House File 194, from which the amendment originated, makes no mention of the reasoning behind the amendment.[8] However, according to former state Senator Seeley G. Lodwick, who had sponsored a similar amendment in the senate, the amendment originated because there did not appear to be a clear relationship between the sources of income of the applicants for the exemption and the goals of zoning. Ill Blows the Wind, 57 Iowa L.Rev. at 496 & n. 264 (citing a telephone interview with Senator Lodwick). Consequently, the general assembly removed the more important part of the test — the section calling for an income analysis — and modified the remainder by requiring the land or structures to be primarily adapted for agricultural purposes. Id. at 496.
*14 According to one scholar, “[t]he effect of the amendment was to make the exemption available to smaller agricultural enterprises that might not have met a primary means of livelihood test, thereby broadening the exemption.” Hamilton, 31 Drake L.Rev. at 567; see also III Blows the Wind, 57 Iowa L.Rev. at 497 (explaining that “subsequent to the 1963 amendment, farm land and structures owned by corporations or individuals deriving most of their income from sources other than the land and structures in question, could be exempted from zoning”). This explanation is consistent with the original intent of the statute, because it interprets the amendment as expanding the “freedom to farm.”
Accordingly, following the 1963 amendment, the plain language of section 335.2 makes it clear that an applicant for an agricultural exemption must satisfy two conditions in order to receive the exemption. First, the applicant must demonstrate that the “land, farm houses, farm barns, farm outbuildings or other buildings or structures” are “primarily adapted” for the asserted purpose. An applicant can demonstrate the asserted purpose is so adapted based on the land’s “nature” and “area.” As one commentator points out, the definition of an asserted purpose could include agriculture, but nonetheless, the use could fail to be primarily adapted for that agricultural purpose by its nature and area. See III Blows the Wind, 57 Iowa L.Rev. at 497. Second, even if the land or structures are primarily adapted for their asserted purpose, that purpose must be an agricultural one. We previously determined agriculture “is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.”[9] Thompson v. Hancock County, 539 N.W.2d 181, 183 (Iowa 1995). We have also interpreted the phrase, “for use for agricultural purposes,” to refer “to the functional aspects of buildings and other structures, existing or proposed.” Kuehl v. Cass County, 555 N.W.2d 686, 688 (Iowa 1996).
I. Substantial Evidence Analysis.
A. Generally. When determining if substantial evidence exists to support the Board’s findings, we view the evidence in the light most favorable to the judgment when a party challenges a ruling for lack of substantial evidence. Raper v. State, 688 N.W.2d 29, 36 (Iowa 2004). When reasonable minds can accept the evidence as adequate to reach a conclusion, we will find such evidence is substantial. Meincke v. Nw. Bank & Trust Co., 756 N.W.2d 223, 227 (Iowa 2008). If the reasonableness of the Board’s action is “ ‘open to a fair difference of opinion, the court may not substitute its decision for that of the board.’ ” *15 Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment, 351 N.W.2d 778, 783 (Iowa 1984) (citation omitted). However, on appeal, the Board’s application and conclusions of law are not binding upon us. See Raper, 688 N.W.2d at 36.
When the relevant evidence is both un-contradicted and reasonable minds could not draw different inferences from the evidence, the reviewing court can determine the facts as a matter of law. Armstrong v. State of Iowa Bldgs. & Grounds, 382 N.W.2d 161, 165 (Iowa 1986). “As a matter of law” means “no other factual finding could be reasonably drawn from the evi-dentiary facts.” Johnson v. Bd. of Adjustment, 239 N.W.2d 873, 888 (Iowa 1976) (citation and internal quotation marks omitted). If we find the record made before the Board establishes the facts as a matter of law, it is unnecessary for us to remand the case to the Board for additional fact finding. See U.S. Cellular Corp. v. Bd. of Adjustment, 589 N.W.2d 712, 721 (Iowa 1999) (declining to remand to the Board when there is no allegation the record contains a specific factual error); Sahu v. Iowa Bd. of Med. Exam’rs, 537 N.W.2d 674, 677-78 (Iowa 1995) (recognizing we are bound by the Board’s factual findings “ ‘unless a contrary result is demanded as a matter of law’ ” (citation omitted)); Armstrong, 382 N.W.2d at 165 (finding “a remand for agency fact-finding is unnecessary when the facts are established as a matter of law”).
B. The 6.52-acre Parcel. The zoning administrator found the 6.52-acre parcel did not qualify for the agricultural exemption, because when the Langs transferred this property, the Langs reduced the parcel to a roughly six-acre tract containing a pond and some berries. The uncontro-verted facts were that the zoning administrator recognized the agricultural exemption for the prior 43.3-acre parcel was for the same use. Thus, if the transferred parcel had still exceeded thirty-five acres, the county’s zoning ordinance would presume the property to be a farm. In other words, the basis for the denial was the size of the parcel.
We observe the review procedure in the Iowa Code: “The concurring vote of three members of the board in the case of a five-member board ... shall be necessary to reverse any order, requirement, decision, or determination of any such administrative official.... ” Iowa Code § 414.14 (emphasis added). The Board voted two-to-two on Lang’s appeal. Thus, under the statute, the Board did not overturn the zoning administrator’s decision with the required three-vote majority. Therefore, the zoning administrator’s decision is the reason the Langs did not receive the agricultural exemption on the 6.52-acre parcel.
The Langs argue the zoning administrator improperly interpreted section 335.2 and applied a minimum-acreage test in denying the exemption for the 6.52-acre parcel. No part of the statutory language of section 335.2 or its predecessor has ever referred to a minimum-acreage test in the sense that a tract of land must be a certain size in order to qualify for the agricultural exemption. See Op. Iowa Att’y Gen. No. 97-1-KL) (Jan. 17,1997), 1997 WL 994719, at *7 (concluding a county may not utilize an objective minimum-acreage test to determine whether land is exempt under section 335.2, but admitting that the size of the farm may be a relevant factor); 1954 Op. Iowa Att’y Gen. 96, 96 (concluding qualification for the agricultural exemption “is determined by the facts as to whether the land is used for agricultural purposes as a primary means of livelihood and not by the area of land with certain boundaries designated as a farm”); see also County of Lake v. Cushman, 40 Ill.App.3d 1045, 353 N.E.2d 399, 401 (1976) (concluding the lili- *16 nois legislature intended its agricultural exemption to be based on the use of the land, not the size of the land); Hamilton, 31 Drake L.Rev. at 575 (arguing Cushman more adequately carried out the intent of the exemption than our decision in Farmegg Prods., Inc. v. Humboldt County, 190 N.W.2d 454, 459 (Iowa 1971) (rejecting a claim that a proposed facility for raising chicks was entitled to the farm exemption, because it would be “organized and carried on as an independent productive activity and not as part of an agricultural function”), disapproved by Kuehl, 555 N.W.2d at 689).
By applying a minimum-acreage test, the zoning administrator incorrectly interpreted section 335.2. The uncontroverted facts show that if the parcel was greater than thirty-five acres and used by the Langs for the same purpose as the 6.52-acre parcel, the agricultural exemption provided by section 335.2 would apply. As the Board found, the Langs are farmers growing trees, berries, asparagus, grapes, tomatoes, and fish.[10] The government enrolled the Langs in programs supporting these agricultural purposes. The United States Department of Agriculture considered the property to be farm ground for federal farm programs. Additionally, the government enrolled the pond in a farm fish program, and the state forester approved a stewardship plan under which the Langs planted more than five thousand trees on the property. The county treasurer, county assessor, Iowa Department of Agriculture, Iowa Department of Natural Resources, Iowa Department of Revenue, and United States Farm Services Agency provided other farm approvals.
Therefore, as a matter of law, I would find the 6.52-acre parcel qualifies for the agricultural exemption. There is no need for us to remand the case to the Board for further findings of fact.
C. House #3. The zoning administrator denied the exemption for house # 3 for the reason that one of the previous tenants, who the zoning administrator recognized as a farmhand, spent less than half his time on agricultural duties and therefore, was not primarily engaged in agriculture. The Board voted to uphold the zoning administrator’s denial of the exemption. The basis for the Board’s decision was the same as the zoning administrator’s — the tenant did not spend enough time doing farm work; therefore, he was not primarily engaged in agriculture.
A “primarily engaged in agriculture” test seems to imply the occupants of the house either spend all of their time carrying out agricultural activities or engage in the agricultural activities as their primary source of income. As the legislative history reveals, the general assembly removed the latter implication from the statute in 1963, see 1963 Iowa Acts ch. 218, § 2, and the former implication would be contrary to the legislative intent behind section 335.2.
Applying the statute as we construe it in this opinion, the Langs must demonstrate the “land, farm houses, farm barns, farm outbuildings, or other buildings or structures” are “primarily adapted” for the asserted purpose. Iowa Code § 335.2. Sec *17 ond, even if the Langs can show house # 3 is “primarily adapted” for its asserted purpose, that purpose must be an agricultural one. Id. An agricultural purpose involves the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.
Thus, the proper inquiry is whether the farmhouse is “primarily adapted, by reason of nature and area, for use for agricultural purposes.” Id. The Iowa Attorney General has confronted this issue before and determined the proper inquiry is whether the occupants of the house are “engaged in agriculture on the land where the houses are located.” Op. Iowa Att’y Gen. No. 97-1-1, at *5. The Board recognized this as the appropriate test. I agree with the conclusion of the Board and the attorney general.
The county gave permission to the Langs to build house # 3 so the person or persons residing there could help with the farm chores. The Langs built the house for that very purpose. Thus, the record establishes, as a matter of law, that the Langs built the house to be primarily adapted for agricultural purposes. The only issue is whether the occupants of the house are primarily engaged in agriculture.
The Code does not require a person who engages in agriculture on a piece of property to do so full time to qualify for the agricultural exemption. If that were the case, the Code would not apply the exemption to a person who farms a piece of property, but has another job as his or her primary source of income.
The uncontroverted evidence shows the asserted purpose for house # 3 is to provide a residence for someone helping to farm the property. Prior to this proceeding, the county recognized the prior tenant of the house was complying with the statute by engaging in agriculture on the land for forty-four percent of a normal workweek.[11] The uncontroverted evidence further shows the Langs’ lease requires the current tenants of house # 3 to engage in agriculture on the land where the house is located — just like the prior tenants. The only difference is that the prior tenants did not have an outside source of income, while the prospective tenants may have such separate income. Although the prospective tenants may have another source of income or employment, their lease nonetheless requires them to engage in the agricultural operation of the land. The evidence shows this involvement is 17.7 hours per week, or forty-four percent of an average workweek. As a matter of law, I would find this level of activity satisfies section 335.2’s requirement that the prospective tenants engage in agriculture on the land where the house is located.
In summary, this is another instance where the government improperly intrudes on the use of an individual’s property. The 6.52-acre parcel contained between four and five acres of nontraditional crops that the zoning authorities did not deem as agricultural, despite the fact the Iowa Department of Agriculture and the United *18 States Department of Agriculture recognized the parcel as qualifying for agricultural programs. Had the Langs planted this acreage in corn or soybeans, there is no doubt in my mind the zoning authorities would allow the agricultural exemption. Furthermore, the undisputed evidence shows the time spent by the occupant of house # 3 tending the nontraditional crops totals approximately forty percent of a normal workweek. Under the prior district court ruling, this was sufficient time for the house to qualify for the exemption. By finding substantial evidence supports the zoning authorities’ decision, the majority is empowering these authorities to deny the Langs the lawful use of their land and receive the benefits therefrom, including the agricultural exemption. Accordingly, I would reverse the decision of the district court affirming the Board’s denial.

. Section 335.2 was originally codified at section 358A.2. The code editor transferred the section to its current location in 1993. All references to the section, both before and after the transfer, will be to section 335.2.

. The amendment of section 335.2 accompanied the amendment of a statute permitting any county with a population of more than thirty thousand people to adopt a building code, but exempting "farm houses or other farm buildings which are primarily adapted by reason of nature and area, for agricultural purposes.” See 1963 Iowa Acts ch. 218, § 1. The accompanying house file reveals that the original language of the section permitting counties to adopt their own building codes originally exempted "farm houses, or other farm buildings which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood.” H.F. 194, 60th G.A., Reg. Sess. available at http://contentdm.legis.state.ia.us/cdm4/search. php (1963). House File 194, however, was amended prior to its adoption to remove the language pertaining to "a primary means of livelihood” from the section pertaining to building codes and section 335.2. See id. The explanation of House File 194 states the purpose behind the section pertaining to county building codes but is silent as to the removal of the “primary means of livelihood” language. See id.

. As a side note, we have never imposed a requirement that agricultural activities be for-profit, which seems to be something the Board and zoning administrator were concerned with. Many of the old cases seem to presume that agricultural activities be for profit, but section 335.2 does not require it. Although section 335.2 is entitled "Farms exempt,” it does not define what a "farm” is for the purposes of the statute. When a statutory term is undefined, we give it its common meaning. A "farm” may be defined as "a tract of land devoted to agricultural purposes,” "a plot of land devoted to the raising of animals and esp. domestic livestock,” or "a tract of water reserved for the artificial cultivation of some aquatic life form.” Merriam-Webster’s Collegiate Dictionary 454 (11th ed.2003). Similarly, a "farmer” may be defined as "a person who cultivates land or crops or raises animals ... or fish.” Id. These definitions do not contain any reference to the derivation of income as a result of the activities or a requirement that the items grown or animals raised be given to any third party. Accordingly, a farm might simply be a tract of land containing crops or animals maintained solely for the use, enjoyment, or consumption of the landowner.

. The Board also recognized the property contained the following crops for commercial production:
1. Trees, 4 to 5 acres, 80% for commercial production.
2. Raspberries, 0.1 acres, 10% for commercial production.
3. Blackberries, 0.1 acres, 10% for commercial production.
4. Asparagus, apples, 1 acre, 75% for commercial production.
5. Grapes, tomatoes, 0.2 acres, 15% for commercial production.

. The previous lease agreement required the former tenants to contribute at least 24.5 hours per week to the agricultural operation. Although the previous tenants’ work log did not specifically allocate hours spent working on the agricultural operation to specific tasks, the Board allocated the hours as follows based on the work log’s descriptions:
1.Case the tree farm: 313.5 hours (20%).
2. Special projects help: 505.5 hours (31%).
3. Take care of sheep: 87 hours (5%).
4. Assist in the management of fish production: 206.5 hours (13%).
5. Other (tasks that could not be clearly assigned to any of the above categories): 497.5 hours (31%).